LACK, by SCUDDER, Guardian, v. BRECHT, Appellant.

**Division Two, December 17, 1901.**

1. **Compulsory Reference:** AMENDMENT OF FINDINGS. In case of compulsory reference, or where the case is one in which a compulsory reference may be directed, the court is empowered to correct the findings of the referee.

2. **Services:** RENDERED FOR FRAUDULENT PURPOSE. The defendant is not entitled to compensation for services put forth by him for the purpose of possessing himself of the moneys of an incapacitated aunt, with the single view to his own aggrandizement, which moneys he refuses to surrender to her guardian until suit is brought to compel him to do so.

3. **Non Compos Persons:** SALE OF REAL ESTATE: RECOUPMENT FOR ADVANTAGES TAKEN. A relative who has taken advantage of one mentally incapacitated to do business, and induced her to sell her real estate to an innocent purchaser with a view of getting the money for his own use, is liable not only for the money realized by him in the sale, but also for the difference between that money and the real value of the property. Nor is it necessary to such recovery by her guardian that she repudiate the sale, before he can proceed in such suit. Nor is it necessary to such suit that the grantee or present owner be an innocent purchaser.

4. ——: ——: ——: DEFERENCE TO REFEREE'S FINDING. And where the evidence in such a case is conflicting as to the value of the property so lost to such incapacitated person, the appellate court will defer to the finding of the referee, who saw and heard the witnesses.

5. ——: ——: ——: ESTOPPEL: KNOWLEDGE: RATIFICATION: ACQUITTANCE. Knowledge is a necessary ingredient of an estoppel *in pais*. The guardian of one who was *non compos mentis* when her real estate was sold through the machinations of a trusted relative, and has not since regained consciousness, is not estopped to recover whatever damages she has sustained. There is no estoppel in such case. A return of the money received, to the guardian, after suit is brought to recover it, is neither a ratification of the sale nor an acquittance of a claim for the damages sustained.

6. ———: ———: INTEREST: CONVERSION: DEMAND: STATUTE. The action provided for by section 3705, Revised Statutes 1899, fixing the rate of interest "for money recovered for the use of another and retained without the owner's knowledge of its receipt," is for trover or conversion, and the statutory rate is to be charged from the date of the conversion, whether there has been any demand therefor or not. So that where a nephew induced his *non compos* aunt to deed her land to a personal friend under false representation, and then had such friend to deed it to an innocent purchaser, and appropriated the money received to his own use, he is, without any demand having been made therefor, liable not only for the difference between the money received, which he has been compelled to disgorge, and the actual value of the property, but also, as compensatory damages, for interest on such difference at the statutory rate from the day of such sale or conversion, even though such difference is unliquidated damages. The word "goods" as used in the statute includes real estate in such case.

7. **Interest in Conversion and Trover.** Interest in the nature of damages is allowable in actions of trover and conversion. Section 4430. Revised Statutes 1899, is merely the enactment of the common-law rule in this State on that subject.

Appeal from St. Louis City Circuit Court.—*Hon. Jacob Klein,* Judge.

AFFIRMED.

*Lubke & Muench* for appellant.

(1) The trial court erred in overruling the defendant's motion in arrest of judgment. Defendant's counterclaim was specific as to amount, and prayed judgment for the difference between the $5,144.88 accrued to defendant and the $4,274.94 received by him, to-wit: $869.94; but no finding or judgment was entered one way or the other upon this prayer. Under, the statute this counterclaim constituted a cross-action in favor of defendant against plaintiff. R. S. 1889, sec. 2050; R. S. 1899, sec. 605; Ritchie v. Hayward, 71 Mo. 560; Barns v. McMullen, 78 Mo. 260; Ashby v. Shaw, 82 Mo. 76. And

defendant was entitled to judgment for the excess of it over the plaintiff's demand; or the denial of a judgment in so many words if the trier found against it. Hay v. Short, 49 Mo. 139; Gordon v. Bruner, 49 Mo. 570. When several distinct causes of action are stated, there must be separate and distinct findings upon each. Mooney v. Kennett, 19 Mo. 551; Clark's Admr. v. Railroad, 36 Mo. 215; Pitts v. Fugate, 41 Mo. 405; State ex rel. v. Dulle, 45 Mo. 270. This rule also applies to the findings of a referee. State ex rel. v. Peterson, 142 Mo. 526. (2) The court erred in sustaining plaintiff's exception to the referee's report, and adding $140 to the finding of the referee on the first count of the petition. There was no conflict in the evidence which established that defendant actually rendered plaintiff services fourteen months in looking after her property and financial interests. Neither was there any conflict in the evidence which showed that these services were worth more than ten dollars per month. And although there was no proof of an express promise by plaintiff to pay for these services, the law will imply that promise. They were not domestic services; and the plaintiff was not entitled to them as a matter of right. Furthermore, the evidence made it apparent that Mrs. Lack did not intend them to be gratuitous, because she endeavored to make compensation by the gifts which the referee and trial court repudiated. And defendant's relation to plaintiff (i. e. adult nephew) was not such as to overcome the promise of compensation which the law implies. And the finding of the referee, based upon evidence, is like the verdict of a jury establishing such promise. Dougherty v. Whitehead, 31 Mo. 255; Hart v. Hart, 41 Mo. 441; Hay v. Walker, 65 Mo. 17; Buelterman v. Meyer, 132 Mo. 474; Hiemenz v. George, 51 Mo. App. 586. (3) The referee erred in finding against defendant upon the second count of the petition for the sum of $2,500 and interest. (a) There was no loss by the sale of the real estate to Parsons for $16,500, the price which the guardian (with interest) subse-

quently actually received for it; hence, whether or not defendant erred in bringing about a change of the character of the investment, is immaterial. An agent is not liable for a merely probable or possible loss; it must be real and actual. And if it is speculative only, there can be no recovery against him. Story on Agency (8 Ed.), secs. 220, 222, 518; McHale v. Heman, 28 Mo. App. 193; Metzner v. Graham, 66 Mo. 653. (b) Plaintiff did not repudiate the sale and made no efforts to recover back the specific property. There was not in the pleadings or evidence anything upon which a finding that Mrs. Parsons was an innocent purchaser could be predicated. The deed of an insane person may be avoided by his guardian. Tolson v. Garner, 15 Mo. 494; Halley v. Froester, 72 Mo. 73; Wells v. Mut. Ben. Assn., 126 Mo. 630; McClain v. Davis, 77 Ind. 419; Moore v. Horshy, 90 Pa. St. 196. (c) The injury was avoidable; and it was the plaintiff's duty to avert its consequences before calling on defendant. Alliance Trust Co. v. Stewart, 115 Mo. 236; Railroad v. McGrew, 104 Mo. 282; Kansas City v. Morton, 117 Mo. 446; Coal Co. v. Brick Co., 66 Mo. App. 296. (d) The plaintiff ratified the sale and accepted the fruits thereof, and is therefore estopped from claiming anything more. All merely avoidable contracts may be ratified. Bishop on Contracts, sec. 620, p. 622. The guardian of an insane person may elect for his ward. Chandler v. Simmons, 97 Mass. 508; Warfield v. Frisk, 136 Mass. 219. The acceptance by the guardian, of the notes and deed of trust securing them, which had been placed in the safe deposit by the defendant and Mr. King, pending the proceedings to determine the mental capacity of Mrs. Lack, and the subsequent acceptance of payment of these notes by the guardian with full knowledge of the facts and the release of the deed of trust, operated in law as a ratification of the defendant's acts in selling the property. There can be no such thing as attacking an act as being illegal and unauthorized, and at the same time accepting the fruits of it. 2 Bouvier's Dic., p. 411;

Gamble v. Gibson, 59 Mo. 585; Austin v. Loring, 63 Mo. 19; Slagel v. Snider, 65 Mo. 522; Gatzweiler v. Lackman, 23 Mo. 168; Huff v. Price, 50 Mo. 228; Collins v. Trotter, 81 Mo. 275. (4) The referee as well as the circuit court erred in charging defendant with interest from February 9, 1892, upon the amount found against defendant on the first count of the petition. This suit was not begun until November 12, 1892, and no specific demand was alleged in the petition or shown by the evidence. The cause of action set forth in this count was an account; and under the statute which fixes interest, none can be recovered in such cases until there has been a demand of payment. R. S. 1889, sec. 5972; R. S. 1899, sec. 3705. Interest can not be allowed on accounts till after demand. Southgate v. Railroad, 61 Mo. 90. Where in a suit on an open account there is no evidence of any demand, interest does not begin to run until the commencement of the suit. Evans v. Western Brass M'f'g. Co., 118 Mo. 548. (5) The referee and the court below also erred in finding defendant liable for interest from February 9, 1892, on the cause of action alleged in the second count of the petition. No interest was chargeable thereon until after judgment. The pretended cause of action was in tort, and plaintiff did not become a creditor of defendant, as to it, within the language and meaning of the statute allowing interest, until the judgment was entered. R. S. 1889, sec. 5972; R. S. 1899, sec. 3705. Interest is a creature of the statute and can be allowed and computed only according to the law of the forum. Wiggin's Ferry Co. v. Railroad, 128 Mo. 224; Bradley, Wheeler & Co. v. Asher, 65 Mo. App. 593.

*John M. Wood* and *M. Kinealy* for respondent.

(1) All the issues were passed on by the referee and the court. (2) Appellant was not entitled to any allowance for services claimed by him to have been rendered to respon-

dent. (3) The finding of the referee, as to the loss sustained by respondent, because of the sale of her real estate, was correct. (4) Respondent was not required to repudiate the sale, or to make any efforts to recover back her real estate, before instituting this suit. Paquin v. Milliken, 163 Mo. 79; Girard v. St. L. Car Wheel Co., 123 Mo. 358; Clark v. Clark, 59 Mo. App. 532; Welch v. Seligman, 72 Hun, 138; Crooker v. Appleton, 25 Me. 131; McFarland v. Railroad, 28 S. W. 590; Goodyear Dental V. Co. v. Caduc, 144 Mass. 85; Humphrey v. Havens, 12 Minn. 298; Murran v. Brichta, 9 S. W. 185. (5) Appellant's point, that "the injury was unavoidable, and it was the appellant's duty to avert its consequences before calling on defendant," has no merit. (6) Respondent is not estopped from claiming the full amount of her loss because of the acceptance, by her guardian, of the notes of respondent, and of payment of those notes. Horine v. Horine, 11 Mo. 649; 16 Am. and Eng. Ency. Law (2 Ed.), 573, 578; Schaffer v. List, 114 Pa. St. 486; Ex parte Wood, In re Wright, 10 Ch. D. 554; Clark v. Crout, 34 S. C. 417. (7) There was no accord or satisfaction in this case. Farley v. Pettis, 5 Mo. App. 262. (8) Interest was properly charged by the referee against the appellant for the value of the property which respondent lost by appellant's fraud. Trust Co. v. Clark, 83 N. W. 202; Shaw v. Gilber, 86 N. W. 188; New Dunderberg M. Co. v. Old, 38 C. C. A. 92; Rapelie v. Emory, 1 Dall. 348 (1 L. Ed. 170); Young v. Godbe, 15 Wall. (82 U. S.) 562; L. Ed. 21, 250; Savings Association v. Morrison, 48 Mo. 274; Padley v. Carrerlin, 64 Mo. App. 645; Watson v. Harmon, 85 Mo. 443; State ex rel. v. Hope, 121 Mo. 34; Kamerick v. Castleman, 29 Mo. App. 658. (9) Appellant was not entitled to a finding of the cost of the furniture, etc., purchased by him to fit up the Glasgow Place house.

GANTT, J.—This action was commenced by the guardian of Mrs. Lack, an insane person, in her lifetime, and pro-

ceeds to judgment, but since the appeal has been pending in this court she has died, and by proper proceedings the cause has been duly revived in the name of George H. Bowles, her administrator with the will annexed.

The petition contained two counts. The first stated that upon inquest duly made Mrs. Lack had been found and adjudged of unsound mind, and Charles Scudder appointed her guardian by the probate court of the city of St. Louis; that prior to the inquisition for that purpose she was of weak mind and unable to attend to business and lived with the defendant, Gus A. V. Brecht, who was her nephew; that defendant, taking advantage of her condition without her authority or consent, took charge of her affairs and collected the rents of her real estate to the amount of $1,985.37, and the rents of other real estate in which she had a life estate to the amount of $1,199.17, and certain life insurance to the amount of $69.45, and converted the same to his own use, and also a certain note of $2,000, executed by his father to Mrs. Lack, for all of which she asked judgment by her guardian.

For a second cause of action the petition alleged that defendant, taking advantage of her mental infirmity, induced her without any consideration to sign a conveyance of her real estate in the city of St. Louis to one Nunn for the recited consideration of $15,000, on the pretense that the document was a paper relating to her taxes, and then caused said Nunn to convey said real estate to Mrs. Henrietta Parsons for $16,500 cash, which moneys he received, and converted to his own use; that this transaction became known to the sister of Mrs. Lack, and upon her complaint and demand the defendant executed two notes, one for $15,000 and the other for $1,500, which he secured by a deed of trust on certain real estate, which notes eventually came into the hands of the guardian of Mrs. Lack; that by said conveyances her real estate was lost to her and she was damaged $38,000, for which sum, less the

amount, if any,. which might be collected on said notes for $15,000 and $1,500, she prayed judgment.

To this amended petition appellant filed an amended answer in which, as to the first count, he denies all the allegations not expressly admitted by him, and states that the total amount received on account of the matters therein set forth was $4,272.94, and that he expended for respondent the sum of $5,144.88, a statement of all which receipts and expenditures is on file in this case; that respondent on December 22, 1891, presented him with all the income of her property and all her cash on hand and presented to him on a later day all her household effects, and that if these gifts be held invalid she owes him a balance on the above account of $869.94, for which he asks judgment.

As to the second count, appellant says that he denies all the allegations thereof, not expressly admitted, and that the real estate in question was sold by appellant at respondent's instance and request for the sum of $16,500; that the $1,500 and the $15,000 notes were given in full payment and satisfaction of said $16,500 and of all demands of respondent against appellant, and that since the commencement of the suit plaintiff received full payment of those notes.

For reply to this answer, respondent filed general denials.

On motion of defendant the cause was referred to a referee to try and report on all the issues. The referee, on the first count and the answer thereto, stated an account and reported a balance in favor of plaintiff for $1,471.04, with interest at the rate of six per cent per annum from February 9, 1892, and on the second count, he found in favor of plaintiff for $2,500, with interest at six per cent per annum from February 9, 1892.

On exceptions to the report by plaintiff, the court disallowed an item of $140 which the referee allowed defendant for personal services to Mrs. Lack, and overruled defendant's exceptions to the report, and rendered judgment for $5,451.22,

the sum of the findings on both counts, principal and interest, to date of judgment.

The referee's report states the facts developed in the evidence and his findings thereon. The report shows a clear grasp of the evidence and its probative effect, and but for the great space it would occupy, would be set out in full. Suffice it to say that from it, it clearly appears that Mrs. Lack, prior to her marriage, was Miss Emilie Brecht and had accumulated property in her own right. In 1875 she married Frederick Lack, a clergyman and a widower, with children, and superintendent of the Provident Association, a St. Louis organization engaged in relieving the poor. Here he and his wife resided until his last illness. Some months before his death Mr. Lack was removed to a hospital, where he died in February, 1891. By his will he bequeathed all his personal property to his wife absolutely, and his real estate to her for life, remainder to his two children by a former marriage. He appointed his wife executrix without bond.

Mrs. Lack had no children, her relatives being a brother of the whole blood, Gustav V. Brecht, the father of defendant, a sister of the half blood, Mrs. Ida A. King, and two children of Oscar Brecht, a deceased brother of the half blood. The defendant from his infancy had been a favorite of Mrs. Lack's, and lived with her most of the time until he was eighteen years old. Mrs. Lack continued at the Provident Association home after her husband was removed to the hospital. She was requested to give up her room, but was unwilling to do so. For some time she had been very eccentric, and now became more so. Finally her brother removed her to his house, 1211 Cass avenue. He was living in a few rooms over his butcher supply shop, and with a view of providing a more comfortable place for his sister, he fitted up No. 1119 Cass avenue for her and his three sons, where they would be near him. Mrs. Lack did not like this place and after ten months went to 3009 Glasgow place. This house was fur-

nished partly with furniture taken from 1119 Cass avenue, partly with new furniture purchased by defendant and partly by Volkening, but Mrs. Lack's room was furnished with her old furniture.

At the death of her husband, Mrs. Lack had on hand $272 in cash, and she owned in her own right ground on the west line of Jefferson avenue fronting 60 feet on Wash street and running of that width 143 feet through to Mills street, whereon were eight dwellings, and rents from real estate of her deceased husband. For a year after Mr. Lack's death, defendant collected these rents, and she also turned over to him the $272 in money. All these he had deposited in his own name. He also collected $690.45, amount of a Merchants Exchange Mortuary Certificate, and sold her piano for $50, all of which he likewise deposited to his individual credit. These all amounted to $4,274.94. The referee found that the evidence failed to show a conversion of the alleged $2,000 note.

In respect to the disposition of the $4,274.94, the defendant, both by his counterclaim and answer and his evidence, shows that he expended it, and the alternative explanations of this expenditure are that he expended it as the money of Mrs. Lack and for her use, or that by gift from her these moneys were his own. As to the first alternative, in his answer he exhibits an account, in which his expenditures exceeded his receipts over $800, and most of it went for furnishing the houses at 1119 Cass avenue and the Glasgow place house. He says she agreed to pay for these furnishings, but the other witnesses say Mrs. Lack never regarded the furniture as hers. As to the claim that they were gifts to him by Mrs. Lack he produced two writings. One, exhibit "D," is as follows:

"St. Louis, December 22, 1891.

"My Dear Nephew Gussie:

"In consideration of your kindness, pleasant and com-

fortable home you have provided for me, I give you the income of my property and of cash funds on hand.

"Your Aunt,

"EMILIE LACK."

He says this writing was made by Mrs. Lack in his presence, and he dictated the consideration.

Two days later she made the other writing, in these words:

"St. Louis, December 24, 1891.

"My Dear Nephew Gussie:

"I present you for a Christmas present all my household effects.

"Yours sincerely,

"EMILIE LACK."

Aside from his own testimony, these papers are the only evidence of these gifts. No third person was present, and she never spoke to any other person about them. If these gifts were valid they stripped Mrs. Lack of every vestige of property she owned, save the legal title to her lots, without the usufruct thereof. At this same time, negotiations were pending by defendant and Scott and Terry, as agents, for Mrs. Parsons, for the sale of her real estate on Wash and Mills streets. With a view to effect their sale, he suggested to her to deed the lots to A. R. Nunn, who took the title for a few days, and then at request of defendant conveyed it to Mrs. Parsons for $16,500. Defendant received all the purchase money and deposited $15,000 of it to the credit of his Butchers' Supply Company and $1,500 to his individual credit. All the negotiations, so far as Mrs. Lack was concerned, were between her and defendant. Neither Nunn, nor Mrs. Parsons, nor Scott nor Terry, saw her or spoke to her on the subject. Mrs. Ida King, her half-sister, having read a notice of the

sale, went to see her, forced her way into her room, and spoke
to her about it, and Mrs. Lack denied she had made such a
deed. Mrs. King consulted an attorney, and he invited de-
fendant to his office where he met Mrs. King and her husband.
They upbraided him for his conduct and demanded that he
secure Mrs. Lack for the houses, which they estimated at
$20,000. A draft of papers for that purpose was made but he
desired to consult his lawyer, and took the papers with him.
A second meeting was had and he produced another set of
papers, prepared by his lawyer, which consisted of one note
for $15,000, and another for $1,500, of date February 9,
1892, payable to Mrs. Lack in one year and secured by deed
of trust, with John C. King as trustee, were executed and
delivered and by agreement were deposited in safe deposit box
in the joint names of King and defendant. There is no evi-
dence that Mrs. Lack authorized the Kings to act for her,
and demand this settlement, or that she was even informed
of what was done at that time.

Soon after this, Mrs. Lack's stepson, Frederick Lack, and
Mrs. King took steps to have Mrs. Lack put under guardian-
ship, and the inquisition resulted in a judgment of unsound
mind, and the court appointed, by mutual consent, Charles
Scudder, her guardian. Defendant and John C. King then
turned over the notes and deed of trust to Mr. Scudder, and
after the commencement of this suit defendant paid Scudder
the amount of the notes and interest. The evidence amply
justified the finding that Mrs. Lack was of unsound mind and
incapable of managing her affairs or transacting any of the
important business above mentioned.

The statement of the account rendered by the referee is
assailed by the defendant on several grounds.

First, he complains that he made no distinct finding on the
counterclaim of defendant.

Second, that he erred in allowing interest by way of dam-
ages on the sale of the lots.

Third, that he erred in finding $2,500 against defendant upon the second count.

Fourth, that the referee and circuit court both erred in allowing interest on each count.

Fifth, that the court and referee both erred in refusing to credit defendant with the cost of the furniture in the Glasgow Place house.

We will endeavor to dispose of these exceptions in their order.

I.   It is obvious that the referee, in his very careful and explicit statement of the evidence and his findings thereon, did make distinct findings upon every item in defendant's answer, and gave his reasons for allowing some, part of others and refusing others.   This can be seen at a glance.   In his answer, defendant admitted receiving $4,274.94 for and on account of Mrs. Lack, and then asserted that he had expended for her and at her request and for board and lodging $5,144.88 as shown by an itemized statement prepared by him and attached to his deposition in the case.   The referee went through the evidence and found that defendant was properly chargeable on the first count with only $4,274.94 and set forth each item going to make up that aggregate.   He therefore debited him with that amount.

He says:

"I allow the item of board at $50 per month, and the item of services at $10 per month.   The other items in the exhibit of expenditures, not heretofore especially noticed, I allow as there stated, and give the following statement covering all the items as allowed by me:

(1)  Cass Avenue expenditure:
     Lammert—Vases $     9.50
     Curtains and dra-
          peries .. ....     25.00
     Fay gas fixtures.....     34.30

Lack v. Brecht.

| | | | |
|---|---|---|---|
| Ringen stove .... | 37.50 | | |
| Hard coal stove.. | 18.25 | | |
| China set ...... | 17.50 | | |
| Kroequish carpets | 78.94 | | |
| Kepuord carpets.. | 325.00 | | |
| Mantel mirror .. | 50.00— | 595.99—1-2..  | $297.99.5 |
| Rent .. ...... | 246.10— | 246.10—1-2.. | 123.05 |
| Papering ...... | 58.75 | | |
| Cleaning carpet .. | 19.50— | 88.25—1-2.. | 44.12.5 |
| Housekeeping ... | 1,250.00—1,250.00—1-3— | 416.67 | |

$881.84

(2) Glasgow expenditures:

| | | | |
|---|---|---|---|
| Linens ........ | 15.00 | | |
| Ringen range .. | 52.50 | | |
| Dining table .... | 33.00 | | |
| Hall tree, chair, etc.. .... .. | 99.50 | | |
| Barr & Co.—rugs | 21.50 | | |
| Gas fixtures .... | 76.10 | | |
| Keareaed—carpets ........ | 37.93— | 735.53—1-4.. | 183.88.4 |
| Repairs..$165.86x2 | | —331.72—1-4.. | 82.93 |

(3) Reduced items:

Board at G. V. Brecht's, $300.00 to....$   150.00

Services of G. A. V. Brecht, $350.00 to..   140.00

Moving from Wash St., $80.00 to......   15.00

(4) Items as per the account:

Board at Glasgow Place, 5 months at $50..   250.00

Moving to Wash st. and sundry other expenses .. ......................   87.58

Florals and other incidentals at Mr. Lack's funeral .. ...................... 18.55

| | |
|---|---|
| Cash to Mrs. Lack.................... | 25.00 |
| Re-covering an old parlor set.......... | 56.88 |
| Cash to Mrs. Lack.................... | 50.00 |
| Guttering Wash st................... | 175.00 |
| Cash to Mrs. Lack.................... | 50.00 |
| Repairing slate, Wash st............. | 6.60 |
| New dress ......................... | 18.00 |
| Cash to Mrs. Lack.................... | 25.00 |
| Lubke & Muench, Att'ys.............. | 50.00 |
| Repairing roof—Jefferson ave.......... | 5.00 |
| Cash to Mrs. Lack ................... | 25.00 |
| Insurance 25th street houses.......... | 16.60 |
| 1 pug dog ......................... | 10.00 |
| 1 Polly parrot ..................... | 10.00 |
| Painting 2607 Wash st............... | 23.25 |
| Whitening, etc., 2607 Wash st.......... | 6.50 |
| Taxes on Hillsboro farm ............. | 6.25 |
| Repairing at Wash st................. | 6.30 |
| Cash to Mrs. Lack.................... | 50.00 |
| Taxes, Jeff. ave. and Wash st. property.. | 333.74 |
| Moving to Glasgow Place ............. | 20.00 |

Total expenditures allowed............$2,803.90

"From the foregoing amount it appears that the defendant has properly expended $2,803.90 of the $4,274.94, moneys of Mrs. Lack, heretofore found to have been received by him, then leaving a balance of $1,471.04 unaccounted for, it being my opinion that the alleged gifts are void. Upon the first count in the petition, I therefore find for the plaintiff, and assess his damages at said sum of $1,471.04 with interest thereon from March 1, 1892, at six per centum, or rather damages in the nature of interest from that date, and at that rate. [R. S. 1889, sec. 4430.]"

This exception must be ruled against the defendant as it

appears to be entirely without merit.   In its judgment, the
court in all things confirmed the report of the referee save
and except the allowance of $140 to defendant for personal
services rendered to Mrs. Lack, and gives judgment as therein
stated.

II.    There was no error in rejecting the allowance of
$140 to defendant.   The evidence discloses that the defend-
ant was fully compensated for the board  of Mrs. Lack,
and the other services by defendant were strenuous efforts to
possess himself of every farthing owned by his aunt, when she
was utterly incapable of guarding her own interest; services
which necessitated the cost and expenses of this action to com-
pel him to restore the property of the unfortunate woman,
and the court very justly refused him compensation for ser-
vices rendered with the single view to his own aggrandizement.
This is a cause in which a compulsory reference could have
been directed and in such cases the court is fully empowered
to amend and correct the findings of the referee.   [Williams
v. Railroad, 153 Mo. 495; Tobacco Co. v. Walker, 123 Mo.
671.]

III.    It is insisted that the referee erred in finding that
defendant caused a loss of $2,500 to Mrs. Lack by his unau-
thorized sale of her real estate as charged in the second count.

As to this item, the evidence as to the value of these lots
was conflicting, and as the referee saw and knew the witness,
he was in much better situation to weigh their evidence than
we are.   The referee found the property was fairly worth
$19,000 and there was evidence to the effect that it was worth
several thousand more, and in addition to that it was shown
that there was a clear net income from rents for the year
1891 to 1892 of $2,000.   The property was not offered for
sale publicly, but the agents who represented Mrs. Parsons
had private negotiations with defendant, who the testimony
shows was desirous of getting the money to put in his own

Vol 166 mo—17

business.   We see no ground for reversing this finding of fact by the referee in so far as the actual loss incurred by Mrs. Lack by the sale of her lots.

As to the proposition that Mrs. Lack did not repudiate the sale, it is sufficient to say that she was never conscious, after the consummation of the sale, of the wrong defendant had perpetrated.   As Mrs. Lack had not been adjudged insane, and Mrs. Parsons knew nothing of her unsound condition of mind, but was an innocent purchaser, there was no alternative left the guardian but to proceed against defendant.   Under the evidence he could not have repudiated the sale and recovered from the innocent purchaser without notice.   But whatever right Mrs. Lack or her guardian might have had to repudiate the sale, it in nowise curtailed her right to proceed directly against defendant, whose conduct had jeopardized her title by his unauthorized acts and his misappropriation of the purchase money received by him therefor.

We are at a loss to grasp the point made that "the injury was avoidable and it was plaintiff's duty to avert its consequences before calling on defendant."

Mrs. Lack, all the evidence indicates, had not sufficient mental capacity to understand the nature of the deed which defendant procured her to sign, and of course was herself powerless to avert the injury which followed, and her sister, Mrs. King, and the guardian acted promptly.   It was in defendant's power alone to mitigate the damages by promptly restoring the proceeds of the sale, which he did not do until sued.

There is no estoppel in this case.   Knowledge is a necessary ingredient of an estoppel *in pais.*   None is pleaded and in fact Mrs. Lack had no knowledge of the scheme which defendant was engineering.   When defendant says that "plaintiff ratified the sale and accepted the fruits thereof and is therefore estopped from claiming anything more," he overlooks the fact that Mrs. Lack was non compos—so that she could not

make a settlement with him, and a ratification implies previous authorization or agency, which the evidence shows was not given in this case. Certainly there was no such power in the statutory guardian as would empower him to ratify this sale of his ward's real estate.

The circumstances under which the $16,500 was returned to Mrs. Lack's estate, forbid the deduction that it was an acquittance by her or any one authorized to represent her. We think there was neither an express nor implied ratification of defendant's sale. He has received credit for all that he has paid, but he has not thereby made good the remainder of the damage caused by his unauthorized conveyance of her lands.

IV. We are thus brought to the final contention so earnestly urged by counsel in argument, that both the court and the referee erred in charging defendant interest upon the amount found in his hands from February 9, 1892, on the first count, because the cause of action is an account, and there was no specific demand prior to the bringing of the suit on November 12, 1892. The premise of this proposition is incorrect. The first count of the action is not on account, but for trover and conversion, or in the language of section 3705, Revised Statutes 1899, fixing the rate of interest in such cases, "for money recovered for the use of another and retained without the owner's knowledge of the receipt." The statute fixes the rate and the decisions of this court fix the time from which it begins to run as of the date of the conversion.

The referee then did not err in allowing six per cent interest from February 9, 1892, on the balance found, on the first count. [Watson v. Harmon, 85 Mo. 443; R. S. 1899, sec. 3705; R. S. 1889, sec. 5972; State ex rel. v. Hope, 121 Mo. 34; Spencer v. Vance, 57 Mo. loc. cit. 430; R. S. 1889, sec. 4430.]

The learned counsel, however, urged that while interest might be allowed on the conversion of "goods," our statute

could not be construed as covering the case of the conversion of the $2,500, the damages accruing from the real estate transaction. The argument is that interest can not be allowed on unliquidated damages for injuries to persons or property. It is true that in this State it has often been held that in actions for unliquidated damages, such as assault, negligence, accident, neither interest, *eo nomine*, nor damages in the nature of interest, are allowable in the absence of statutory authority. But not one of the decisions cited by counsel reaches the point now in issue.

Here the defendant has without authority deliberately sold and converted valuable rent-producing real estate, belonging to his demented aunt, the value of which at the time of conversion is readily ascertainable, and by the finding of the referee and the court was found as of that date. It is true the courts do not undertake to measure her loss by the profits which might have accrued to her, but they measure the damages by the ruling rate of interest, not as interest, but by way of compensatory damages. Unless this is done a premium is granted to the tortfeasor in such cases, and the injured owner loses the usufruct of his or her property without any redress whatever.

But, say counsel, the Legislature has spoken on that subject and by section 4430, Revised Statutes 1889, in force when this conversion took place, only allowed the jury on the trial of any issue or on any inquisition of damages to give if they see fit, damages in the nature of interest over and above the value of the goods at the time of the conversion or seizure, and thus have restricted the damages to the conversion of goods alone, and that statute would not allow damages in a conversion of real property.

By the same token nobody but a "jury" *strictissimi juris* could award such damages, even in the case of the conversion of "goods," and the court, a jury being waived, could not do it, nor a referee. Certainly, no one would seriously contend for such a restricted construction as this, neither do

we think the statute should receive such a narrow construction as to the word "goods." A like narrow interpretation of the statute would exclude moneys unlawfully converted.

This statute belongs to that class designated by the courts as a remedial statute, and the uniform rule in the construction of such statutes is to give the words a literal construction so as to apply them to those cases which can reasonably be brought within their meaning.

Sutherland, in his work on statutory construction, furnishes numerous examples, in which the most eminent judges and courts have extended the remedial effect of statutes beyond the exact meaning of the particular word or words used in the statute, while at the same time admitting the philological criticism of applying the particular word to persons or things not ordinarily included in it. [Sutherland on Stat. Cons., secs. 415-16-17 and 18.]

Broom, in his Maxims, page 664, et seq., in discussing the maxim *"Expressio unius est exclusio alterius,"* says: "It sometimes happens that in a statute, the language of which may fairly comprehend many different cases, some only are expressly mentioned by way of example merely, and not as excluding others of a similar nature. So, where the words used by the Legislature are general, and the statute is declaratory of the common law, it shall extend to other persons and things besides those actually named."

Now, independently of any statute, this court had long ruled that damages in the nature of interest was allowable in actions of trover and conversion and the enactment of section 4430 was merely the enactment of the common-law rule in this State, and raises no presumption that it did not exist before. Such acts are often passed as an affirmance of existing law, and to remove doubts. A liberal construction of section 4430, Revised Statutes 1889, now section 2869, Revised Statutes 1899, having in view the obvious purpose of the statute, will make it applicable to the facts of this case and extend it to all

property of which the owner has been deprived by the unauthorized act of another, and converted to the use of such other person.

The referee distinctly found that he did not allow interest asked, but as damages in the nature of interest, and to have refused it would have denied the plaintiff the use of her property with no redress for its unlawful conversion.

V.   We think the finding of the circuit court and referee that defendant should not be allowed a credit for the furniture bought for the Glasgow Place property was based upon sufficient evidence to sustain that finding, and being on a question of fact will not be disturbed by this court.

The judgment of the circuit court is affirmed.   All concur.