**INDEPENDENCE FLYING SERVICE, INC.,
a Missouri Corporation (Plaintiff),
Appellant-Respondent,**

v.

**Vesta AILSHIRE (Defendant),
Respondent-Appellant.**

**No. 51815.**

Supreme Court of Missouri,
Division No. 1.

Dec. 12, 1966.

Motion for Rehearing or for Transfer to Court
En Banc Denied Dec. 30, 1966.

Donald E. Raymond, Thomas M. Howell and Terrence Riley, Kansas City, for Independence Flying Service, Inc.

Walter A. Raymond and Raymond, West & Cochrane, Kansas City, for Vesta Ailshire.

HOLMAN, Presiding Judge.

Plaintiff, a former lessee of a 60-acre flying field, filed this suit to recover damages from the lessor for the alleged conversion of certain buildings and other improvements it had constructed on the premises. The defendant-lessor contended that plaintiff's right to remove the buildings had been forfeited because of nonpayment of rent and other lease violations. In the first trial the court found for defendant, but on appeal we held that there had been no legal forfeiture and that defendant had been guilty of conversion in re-entering and forcibly excluding plaintiff from the premises. The judgment was reversed "and the cause remanded for proceedings to assess lessee's damages." Independence Flying Service, Inc. v. Abitz, Mo.Sup., 386 S. W.2d 399, 405. One John Abitz, a sublessee, was originally a defendant, primarily because of other relief sought by plaintiff, but he has not been involved in the case since the remand.

After remand the parties waived a jury and the case was retried upon the limited issue of assessing plaintiff's damages resulting from the conversion by defendant. At the beginning of that trial the contrary positions of the parties became apparent. It was plaintiff's theory that it should re-

cover the value of the buildings in place, i.e., as located and used on defendant's land. On the contrary, it was defendant's theory that "the only right the lessee had to buildings that it constructed on the property was the right of removal and that its measure of damages is necessarily limited to the value of the right to remove the buildings." The court ruled that evidence would be heard on both theories and the issue determined at the conclusion of the trial. The trial resulted in a judgment based upon the value of the buildings on the date of conversion as situated on the land, which amount was found to be $14,938. The court gave defendant credit for $700 she paid to satisfy a mortgage on the gasoline pumps, resulting in a net judgment for plaintiff in the sum of $14,238. The court further found that defendant "acted in good faith, even though failing to technically follow the rules of law in converting the property to her own use. It was her belief that she was entitled to claim such forfeiture and the Court sustains her position that plaintiff is not entitled to interest, as claimed, as the result of the conversion."

■ Both of the parties have appealed. Plaintiff here contends that its damages amounted to a much larger sum than the court allowed, and that it was entitled to recover interest thereon. It is defendant's contention on appeal that the court erred in refusing to limit plaintiff's damages to the removal value of the buildings. We have appellate jurisdiction because the difference between the amount of the judgment and the sum of $29,280, which plaintiff contended it should recover (supported by evidence), exceeded $15,000. Section 477.040 (all statutory references are to RSMo 1959, V.A.M.S.); Mo.Const., Art. V, § 3 (1945), V.A.M.S.

We will briefly describe each building or other improvement and state the evidence relating to its value on the date of conversion, i.e., June 17, 1959.

*West hangar:* This is a building 28 x 360 feet, covered by corrugated metal, with nine bays, all of which are open on the front except one. Plaintiff's former president, Mr. Morris, fixed its value at $25,000. Its witness McFall said it could have been constructed new in 1959 for $20,500. Defendant's witness, John Lund, estimated its erection cost at $9,520 and stated that its salvage value was $1,300.

*Office building:* This is a concrete block structure 18 x 26 feet. It was rebuilt by plaintiff after it took possession. Mr. Morris fixed its value at $5,000. Mr. Lund was of the opinion that it could have been built for $2,106 and that it had no removal value.

*Shop building:* This 32′ x 40′ building was constructed with concrete blocks and galvanized iron siding. According to Mr. Morris its value was $4,000. Another witness for plaintiff fixed its value at $1,702. Mr. Lund said it had no salvage value.

*Concrete block hangar:* Mr. Morris said this 34′ x 41′ structure was worth $3,500. Plaintiff's witness McFall said it could have been constructed in 1959 for $3,400. At that time about one-third of its life had been used. Mr. Lund did not appraise this building.

*Lean-to hangar:* This building was 66 x 24 feet in size. Mr. Morris fixed its value at $2,500. Defendant had replaced the roof shortly after she took possession. Plaintiff's witness McFall said it could have been replaced in 1959 (without roof) for $1,633. Mr. Lund said it was worth $2,534 and had a removal value of $1,267.

*Gas service island:* Mr. McFall fixed the 1959 replacement value of this facility at $860, without pumps. Mr. Morris stated it was worth $1,500, including the pumps.

*Wind indicator:* This was constructed with a welded frame, covered with fabric, mounted on a swivel in a concrete base. Mr. McFall fixed its 1959 replacement cost at $160.

*Runway lights:* These lights were valued by Mr. Morris at $1,500.

Mr. Lund testified that the value of the airport with plaintiff's buildings and improvements in place was $74,938; that the value of the land only was $60,000. That testimony would indicate a value for the improvements of $14,938 which was the value found by the trial court.

■ We will first determine the issue as to the correct measure of damages. After considering the cases cited in the briefs we have concluded that plaintiff is entitled to recover the value of the improvements as situated on the land. That appears to be a fair and reasonable rule, as that is the condition under which defendant has made use of the improvements since the date of conversion. There are three cases we consider to be squarely in point which unquestionably establish the rule in accordance with the view we have stated. See Neiswanger v. Squier, 73 Mo. 192[3], Red Diamond Clothing Co. v. Steidemann, 169 Mo.App. 306, 152 S.W. 609[3], and Cox v. McKinney, 212 Mo.App. 522, 258 S.W. 445 [10]. Defendant has cited cases such as Russell v. Empire Storage & Ice Co., 322 Mo. 707, 59 S.W.2d 1061, and Kegan v. Park Bank of St. Joseph, 320 Mo. 623, 8 S.W.2d 858, but we do not consider those cases to be in point. They hold that in an action for conversion by a pledgor the pledgee may recoup or offset the amount of the debt from plaintiff's recovery. That rule has no application in the situation before us. As indicated, we rule this point in favor of plaintiff.

■ The determination of the value of the improvements on the date of conversion, as situated on the land, is entirely a question of fact. In that connection we have in mind that in our "review of this court-tried case we consider both the law and evidence, in nature de novo, but we give due deference to the trial court's findings and opportunity to observe and judge the credibility of the witnesses testifying." Norman v. Durham, Mo.Sup., 380 S.W.2d 296, 299. And "[t]he judgment shall not be set aside unless clearly erroneous." Civil Rule 73.01(d).

■ We have carefully considered the evidence of the various witnesses. It is obvious that plaintiff's witness George Morris placed a very liberal value on the improvements. In several instances the value fixed by him was much more than that alleged in the petition. In some instances it also exceeded the replacement value testified to by plaintiff's witness McFall. It appears that he did not take into consideration the age and condition of the buildings. The evidence of Mr. McFall was more reliable but he limited his testimony to the cost of constructing the buildings new in 1959. As heretofore indicated, defendant's witness, John Lund, an experienced real estate broker, expressed the opinion that the improvements as a whole had a value of $14,938, the amount accepted by the court. In view of the wide range of values presented by the testimony of the witnesses we have concluded that we should defer to the finding of the trial judge who had the opportunity to observe the witnesses during their testimony. We accordingly rule that the value of the improvements on June 17, 1959, was $14,938. After deducting the $700 paid by defendant on an equipment mortgage the net amount of plaintiff's recovery on that item is $14,238.

■ We have concluded that the trial court erred in failing to allow plaintiff interest, or damages in the nature of interest, upon the value of the improvements converted. The reason assigned by the trial court for disallowing that item was its finding that defendant acted in good faith under an honest belief that she had a right to the improvements converted. We accept the court's finding of good faith, but we disagree with the conclusion that good faith is a sufficient reason for denying entirely the claim for interest. Regardless of defendant's good faith, the fact remains that defendant has had the use, possession, and rental income from

property of the value of $14,238 for seven and one-half years which she seized from plaintiff and converted to her own use without any payment therefor. If we deny interest defendant will have had the beneficial use of the property without payment, and plaintiff will have been denied the usufruct thereof during all of that period of time.

 "The general rule is that in actions of trover, or actions in the nature of trover, for the conversion of property, interest or the equivalent of interest on the value of the property converted may be recovered." Annotation 36 A.L.R.2d 377. Along the same line we have said that as a general rule, "in actions for conversion, in order to give the injured party full indemnity, interest is allowed on the value of the property from the date of its conversion." Carson v. Smith, 133 Mo. 606, 34 S.W. 855, 858. Moreover, the allowance is authorized by § 537.520 which reads as follows: "The jury on the trial of any issue, or on any inquisition of damages, may, if they shall think fit, give damages, in the nature of interest, over and above the value of the goods at the time of the conversion or seizure." In regard to that statute this court has said that, "independently of any statute, this court had long ruled that damages in the nature of interest were allowable in actions of trover and conversion, and the enactment of section 4430 was merely the enactment of the common-law rule in this state * * *." Lack v. Brecht, 166 Mo. 242, 65 S.W. 976, 981. Under the circumstances of this case the allowance of interest should be at the rate of 6%. Section 408.020.

Defendant tacitly concedes, as the foregoing authorities clearly indicate, that the trial court in its discretion could have allowed interest. It is our view that it was an abuse of discretion not to allow any interest, and we accordingly rule that damages in the nature of interest shall be allowed.

Ordinarily, interest in conversion cases is allowed from the date of conversion. However, in this case, in view of the fact that defendant acted in good faith, we rule that the interest would not begin until there was a formal demand for payment. The transcript does not disclose that any such demand was made prior to the filing of this suit which occurred on September 9, 1961. Interest at 6% on $14,238 from that date to the date of the adoption of this opinion amounts to $4,492.

In the situation presented it is our duty to give such judgment as the trial court ought to have given. Civil Rule 83.-13(c), V.A.M.R. As indicated, the judgment should be modified by the addition of the sum of $4,492 as damages in the nature of interest. It is accordingly adjudged that plaintiff recover from defendant the total sum of $18,730. As so modified the judgment is affirmed.

All concur.