Conrad **STROMBERG**, et al.,
**Respondents/Cross–**
**Appellants,**

v.

Kevin J. **MOORE**, et al., Cross/Respondent, and State Bank of Jefferson County, Appellant, and UMB Bank, n.a., and American Family Insurance Company, Respondent.

No. ED 83912.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 28, 2005.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 4, 2005.

Application for Transfer Denied
Sept. 20, 2005.

Michael A. Campbell, Dawn Ann M. Johnson, St. Louis, MO, for Appellant.

Gregory D. O'Shea, St. Louis, MO, Nicholas G. Gasaway, Jr., Hillsboro, MO, for Respondent.

ROBERT G. DOWD, JR., Judge.

State Bank of Jefferson County (State Bank) appeals from the judgment awarding Conrad Stromberg (Stromberg) $80,000 in damages for negligence and conversion in connection with an $80,000 draft (Draft) issued by American Family Mutual Insurance Company (American Family) in connection with a fire insurance claim. On appeal, State Bank argues the trial court

erred in granting judgment in favor of Stromberg because (1) under the election of remedies doctrine, Stromberg is precluded from claiming an interest in the Draft, (2) under Section 400.3–420, RSMo 2000,[1] liability for conversion is limited to the plaintiff's interest in the instrument, and (3) the doctrine of unavoidable consequences and the doctrine of laches prevent Stromberg from making a claim against State Bank. On cross-appeal, Stromberg argues the trial court erred in denying him damages by way of interest in its application of Section 408.040. We affirm in part and reverse and remand in part.

Viewed in the light most favorable to the judgment, the following facts were adduced at trial. Stromberg owned a plot of ground with buildings located in DeSoto, Missouri. In 1997, Stromberg sold this property to Kevin and Lucinda Moore (collectively referred to as the Moores) for a purchase price of $100,000, receiving $7,000 at closing and taking back a note and Deed of Trust for $93,000. Named as beneficiaries on the Deed of Trust were Stromberg, Mary Stromberg, his wife, Shawn Stromberg, his son, and Margaret Stromberg, his daughter (collectively referred to as the Strombergs). The note secured by the Deed of Trust was payable over twenty years with monthly payments of $807.08. Also at the closing, a policy of fire insurance in the amount of $80,000 was issued on the property naming Complete Auto Repair, the Moore's company, as the insured and Stromberg as the mortgagee.[2]

On June 7, 1998, the buildings on the mortgaged property were completely destroyed by fire. On June 8, 1998, American Family received a telephone proof of loss from its insured, the Moores d/b/a Complete Auto Repair. On July 13, 1998, American Family issued the Draft in the amount of $80,000 which was the total amount of coverage under its policy and made the draft payable to Complete Auto Repair and Stromberg. Kevin Moore received the draft by mail. Stromberg and the Moores met in late July or early August to discuss division of the Draft without reaching any agreement as to its division because the amount the Moores owed Stromberg on the Deed of Trust on the date of the fire was approximately $92,000.[3]

On August 11, 1998, Kevin Moore presented the Draft, purportedly endorsed by both payees, for deposit into his business account at State Bank. Stromberg testified he did not endorse the Draft nor did he authorize Kevin Moore or Complete Auto Repair to endorse the Draft for him.

Linda Tucker, teller for State Bank, testified relating to the deposit of the Draft by Kevin Moore. She testified that Kevin Moore came into the bank with the Draft but was not accompanied by Stromberg. Kevin Moore told Linda Tucker that Stromberg was his partner. Linda Tucker testified that she did not know Stromberg and, at the time of deposit, she did not require identification or verification that Stromberg's signature was correct and genuine. She further testified that there was a partnership resolution on file for

---

1. The U.C.C. has been adopted by the Missouri legislature and is incorporated into the Missouri statutes. See Chapter 400 of the Missouri Statutes. Unless otherwise indicated, all further references are to RSMo 2000.

2. Originally the fire policy was issued through Custom Insurance but coverage was later

changed to American Family for the same amount and with the same loss payees.

3. The record reveals the last payment Stromberg received from the Moores was in May 1998.

Complete Auto Repair showing the signature of Kevin Moore but not that of Stromberg. In fact, Stromberg was never a part of the partnership resolution nor was his signature on record anywhere at State Bank.

Richard Francis, president of State Bank, testified that Stromberg was not a customer of the bank and that he would not have received any notice of account activity. Richard Francis also testified that the bank had no relationship with Stromberg nor did he know of or did the bank have a financial interest in the transaction between Stromberg and Kevin Moore. Additionally, Richard Francis testified the teller is required to know the endorser. There was no signature card on file bearing Stromberg's signature.

Handwriting expert, William Storer, testified that it was his opinion the signature of Stromberg was not genuine.

Before discovering the Draft had been deposited, Stromberg foreclosed on the mortgaged property on November 10, 1998. At the time of foreclosure, he was not aware that Kevin Moore had deposited the Draft into State Bank over the forgery of his signature. Stromberg took back the real estate at the foreclosure sale. Stromberg testified he did not know that the Draft was deposited until after the foreclosure. Stromberg was never a customer of State Bank, nor did he have access to any financial information that he could have reviewed to know of the deposit.

After discovering the Draft had been deposited without his consent, Stromberg notified State Bank sometime in November of 1998 of the forgery and later received a phone call from Richard Francis asking why the forgery had not been re-ported sooner. Stromberg replied that he reported the forgery as soon as he found out about it.[4] Stromberg sent a letter to State Bank after it had been confirmed the Draft was forged. Stromberg demanded return of the Draft proceeds. State Bank, through Richard Francis, denied Stromberg's demand.

This case was presented for trial. After trial, the trial court entered a judgment granting damages for conversion in favor of Stromberg, but denying Stromberg damages by way of interest from the date of conversion. This appeal follows.

On appeal, State Bank argues the trial court erred in granting judgment in favor of Stromberg because under the election of remedies doctrine, Stromberg is precluded from claiming an interest in the Draft. Specifically, State Bank contends that because Stromberg foreclosed on the property as a means of recovering his damages, rather than pursuing a claim against State Bank on the Draft, Stromberg elected his remedy and now cannot pursue a claim for conversion against State Bank. In related points, State Bank argues that liability for conversion is limited to a plaintiff's interest in the instrument, and that the doctrine of unavoidable consequences and the doctrine of laches prevent Stromberg from making a claim against State Bank. We disagree.

In a court-tried case, the judgment of the trial court will be affirmed on appeal unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Id.* We accept all evidence and inferences favorable to the judgment, and disregard all

---

**4.** Stromberg testified that he had called American Family after the foreclosure sale on November 10, 1998 and at that time American Family informed him, for the first time, the Draft had been negotiated.

contrary inferences. *P & K Heating and Air Conditioning, Inc. v. Tusten Townhomes Redevelopment Corp.,* 877 S.W.2d 121, 123 (Mo.App. E.D.1994). We are bound by the trial court's factual findings if supported by substantial evidence in the record. *Id.*

The election of remedies doctrine, a doctrine of estoppel, originates from the theory that "where a party has the right to pursue one of two inconsistent remedies and he makes his election, institutes suit, and prosecutes it to final judgment, he cannot thereafter pursue another and inconsistent remedy." *Whittom v. Alexander–Richardson Partnership,* 851 S.W.2d 504, 506 (Mo. banc 1993)(*quoting Tooker, et al., v. Missouri Power & Light Co.,* 336 Mo. 592, 80 S.W.2d 691, 695 (1935)). The purpose of the election of remedies doctrine is to prevent double redress for a single wrong. *Twellman v. Lindell Trust Co.,* 534 S.W.2d 83, 94 (Mo. App.1976). "Where one elects to pursue one or two or more inconsistent remedies, with full knowledge of all facts, and receives full satisfaction therefrom, he can no longer assert his cause of action." *Skandia America Reinsurance Corp. v. Financial Guardian Group,* 857 S.W.2d 843, 846 (Mo.App. W.D.1993)(*quoting U.S. Fidelity & Guaranty Co. v. Fidelity Nat. Bank & Trust Co.,* 232 Mo.App. 412, 109 S.W.2d 47 (1937)). To determine whether remedies are inconsistent, we look at whether one theory alleges what the other denies or whether one theory is repugnant to another. *Ellsworth Breihan Bldg. Co. v. Teha Inc.,* 48 S.W.3d 80, 82 (Mo.App. E.D.2001).

Here, based on the record, there is no election of remedies problem. First, Stromberg did not recover full satisfaction for his losses. While Stromberg recovered his property through foreclosure at a value of $80,000, he was still deprived of the insurance proceeds because of State Bank's conversion. Second, rather than suffering a single wrong, Stromberg suffered a double wrong. The Moores defaulted on their mortgage obligations under the Deed of Trust and, in addition, State Bank negligently accepted a forged endorsement. Stromberg's theory for recovery against the Moores is not repugnant to his theory for recovery against State Bank. Therefore, as a matter of law, Stromberg's foreclosure action against the Moores is not inconsistent with his claim for conversion against State Bank. *See Twellman,* 534 S.W.2d at 94 (holding that remedy of purchaser of treasurer's check against person who forged the endorsement on the check and remedy against the bank which issued the check and paid it over the forged endorsement were not inconsistent); *see also Davis v. Hauschild,* 243 S.W.2d 956, 960 (Mo. banc 1951)(holding that claim by plaintiff against defendants for deficiency judgment after foreclosure on the Deed of Trust was not barred by the pursuit in an earlier case of a remedy for breach of covenant in the Deed of Trust because remedies were consistent).

Under the facts of this case, Stromberg had no choice of remedies against State Bank. The only remedy Stromberg had against State Bank was for conversion pursuant to Section 400.3–420. At trial, Stromberg testified he had no way of knowing the Draft had been deposited until he was informed of the deposit by American Family and that information was received in November of 1998 after foreclosure. Stromberg had no choice of remedies because he had no knowledge of the fraud until several months after the act took place in August of 1998. Therefore, at the time of the foreclosure, Stromberg did not have "full knowledge of all facts," as the election of remedies doctrine requires.

*See Skandia America Reinsurance Corp.,* 857 S.W.2d at 846.

Similarly, State Bank's argument that Stromberg would receive a "double benefit" by receiving the property by foreclosure in addition to $80,000 resulting from the conversion is unpersuasive.[5] As mentioned earlier, Stromberg suffered two separate wrongs and had a separate remedy for each wrong. Stromberg foreclosed on the property as a result of the Moore's default and, in a separate action, Stromberg pursued State Bank for conversion because State Bank allowed Moore to wrongfully receive payment of the Draft.

Section 400.3–420(a) provides in pertinent part as follows:

> An instrument is ... converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or **a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment.** [Emphasis added.]

Here, State Bank's acceptance of the Draft outside of Stromberg's presence and without requiring verification that Stromberg's signature was genuine violated the provisions of Section 400.3–420(a). Therefore, under Section 400.3–420(b), which states that "the measure of liability is presumed to be the amount payable on the instrument," Stromberg was entitled to receive the face value of the Draft.

Finally, State Bank's argument that Stromberg's claims against State Bank should be precluded under Section 400.3–406, the doctrine of unavoidable consequences and the doctrine of laches, is equally without merit.[6] Because Stromberg was unaware of the forgery until November, he cannot be charged with failing to take reasonable steps to timely notify State Bank of the wrong. The record reveals Stromberg reported the forgery to State Bank within a day of its discovery. The trial court correctly applied the law. Under the facts of this case, we find there was no election of remedies problem, Stromberg was entitled to the face value of

---

**5.** *Travers v. Universal Fire & Cas. Ins. Co.,* 34 S.W.3d 156 (Mo.App. W.D.2000), *Fire Ins. Exchange v. Bowers,* 994 S.W.2d 110 (Mo. App. S.D.1999), *Economy Preferred Ins. v. Schomaker,* 900 S.W.2d 249 (Mo.App. E.D. 1995) cited by State Bank are factually distinguishable from the case at bar. As State Bank admits, these cases dealt with a mortgagee's cause of action against the insurance company under the policy following foreclosure and not, as here, against a third-party bank for conversion under the U.C.C. Moreover, in the cases cited by State Bank, when the debt was extinguished following foreclosure, so was the mortgagee's interest. Here, after foreclosure, the amount owed by the Moores was approximately $92,000, $12,000 more than the assessed value of the recovered property. Therefore, Stromberg's debt was not extinguished by the foreclosure.

**6.** Section 400.3–406 states as follows:
(a) A person whose failure to exercise ordinary care substantially contributes to an alteration of an instrument or to the making of a forged signature on an instrument is precluded from asserting the alteration or the forgery against a person who, in good faith, pays the instrument or takes it for value or for collection.
(b) Under subsection (a), if the person asserting the preclusion fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss, the loss is allocated between the person precluded and the person asserting the preclusion according to the extent to which the failure of each to exercise ordinary care contributed to the loss.
(c) Under subsection (a), the burden of proving failure to exercise ordinary care is on the person asserting the preclusion. Under subsection (b), the burden of proving failure to exercise ordinary care is on the person precluded.

the Draft, and the doctrine of laches and the doctrine of unavoidable consequences are inapplicable. Points one, two, and three are denied.

■ On cross-appeal, Stromberg argues the trial court erred in denying him an award of damages by way of interest in its application of Section 408.040. Stromberg argues that instead of applying Section 408.040, the trial court should have applied Section Sections 408.020 and 537.520 in awarding damages by way of interest. We agree.

■ In general, "in actions of trover, or actions in the nature of trover, for the conversion of property, interest or the equivalent of interest on the value of the property converted may be recovered." *Independence Flying Service, Inc. v. Ailshire*, 409 S.W.2d 628, 632 (Mo.1966). Similarly, "in actions for conversion, in order to give the injured party full indemnity, interest is allowed on the value of the property from the date of its conversion." *Id.* The rate of interest allowable is that prescribed by Section 408.020. *Id.; Southern Missouri Bank v. Fogle*, 738 S.W.2d 153, 158 (Mo.App.S.D.1987).

Here, Stromberg challenges that part of the trial court's judgment which states as follows:

> No prejudgment interest is awarded since the Plaintiffs did not comply with § 408.040 R.S.Mo. and Uniform Commercial Code does not provide for payment of interest. See §§ 400.3–112(4); 400.3-420. Moreover, there is no evidence that State Bank received a benefit from its conduct.

The seminal case relating to conversion damages is *Independence Flying Service v. Ailshire*, 409 S.W.2d 628 (Mo.1966).

The *Independence Flying Service* case involved an action for conversion of certain buildings. *Id.* at 629. As in the present case, the matter was tried without a jury on the issue of damages and the trial court denied interest to the plaintiffs. *Id.* at 631. In *Independence Flying Service*, the Missouri Supreme Court reversed the trial court's denial of interest by stating that in actions for conversion, in order to give the injured party full indemnity, interest is allowed from the date of conversion under Section 408.020. *Id.* at 632.

■ Moreover, Section 537.520 allows for damages "in the nature of interest, over and above the value of goods at the time of conversion or seizure." Therefore, in a case for conversion, the allowance of interest from the date of conversion is part of the damages element of the case. *See Commercial Credit Corp. v. Joplin Auto. Auction Co.*, 430 S.W.2d 440, 445 (Mo.App. 1968) (holding that award under Section 537.520 in "nature of interest in trover for wrongful conversion is a measurement of damages by the ruling rate of interest,— not as interest, but by way of compensatory damages").

State Bank's contention that it received no benefit from the deposits is not relevant to the issue of damages. The loss to Stromberg is the gravamen of the offense and as in *Independence Flying Service*, good faith or lack of malice is not a sufficient reason for denying the claim for interest. *Independence Flying Service, Inc.*, 409 S.W.2d at 631.

Moreover, we find the trial court misapplied Sections 400.3–112 and 400.3–420 [7] in the denial of interest. Section 400.3–112(a) states in part that "[u]nless otherwise provided in the instrument, . . . an

---

7. Section 400–3.420(a) states the law applicable to conversion also applies to instruments. Section 400–3.420(b) states the measure of

liability is presumed to be the amount payable on the instrument, not to exceed the amount of the plaintiff's interest in the instrument.

instrument is not payable with interest." Here, the trial court improperly relied on Section 400.3–112 in ruling as it did, because the Draft in this case did not provide for interest. Moreover, Section 400.3–112 does not provide for the event of a wrongdoing. When the Draft was presented, there was no interest noted, therefore no interest was paid. However, once the Draft was converted, the law of trover and conversion was applicable because of the language contained in Section 400.3–420, which states that the law of conversion applies to instruments. The law of conversion allows interest from the date of conversion in cases, such as here, where a bank's negligence results in a forged endorsement of an instrument. *Hoppe v. First Midwest Bank of Poplar Bluff*, 899 S.W.2d 879, 884 (Mo.App. S.D.1995). Therefore, Stromberg is entitled to interest as of the date of conversion under Sections 408.020 and 537.520.

■ The final issue Stromberg challenges is State Bank's assertion that the trial court properly denied "prejudgment interest" because the notice provision of Section 408.040 was not complied with by Stromberg. Section 408.040 states that if a demand for settlement at a stated figure is made, subject to the notice requirements, and it goes unanswered and the judgment award exceeds that amount demanded, the plaintiff is entitled to prejudgment interest. Section 408.040.2. Section 408.040 does not apply in the instant case because interest is a part of the damages in a conversion case. Stromberg did not seek "prejudgment interest" as defined by Section 408.040, but sought damages for his loss under the law of trover and conversion, Section 400.3–420, which includes interest for the loss of draft proceeds.

The trial court erred in applying the provisions of Section 408.040. Interest in the amount of 9 percent, pursuant to Section 408.020, should be added to the judgment relating back to August 11, 1998, the date of forgery and conversion. The trial court's judgment is affirmed with respect to the award of $80,000 and reversed and remanded for the trial court to add interest pursuant to Sections 408.020 and 537.520.

BOOKER T. SHAW, P.J. and KATHIANNE KNAUP CRANE, J., concur.