# CASES DETERMINED

IN THE

# ST. LOUIS COURT OF APPEALS.

## MARCH TERM, 1879.

---

IN THE MATTER OF THE ESTATE OF JOHN P. CAMP; WILLIAM CAMP, ADMINISTRATOR, Appellant.

### March 5, 1879.

1. Where an administrator has used the funds of his intestate in his own business, rendering no account thereof, he is properly charged with compound interest thereon at ten per cent.

2. The failure to account raises the presumption of such use of the money.

3. That he has charged himself in his inventory with an account against himself on the books of his intestate is open to explanation; and whether this charge on the intestate's books at the time of his death represented a subsisting indebtedness of the administrator to him is a question to be determined by the circumstances of the case.

APPEAL from St. Louis Circuit Court.

*Affirmed.*

SAMUEL REBER, for appellant, cited: Gen. Stats. 1866, p. 493, sects. 54, 55; Perry on Tr. 431, sect. 471; *Hook* v. *Payne*, 14 Wall. 257.

GLOVER & SHEPLEY, for respondents, cited: *In re Williams*, 62 Mo. 269; *Barney* v. *Saunders*, 16 How. 562; *Hook* v. *Payne*, 14 Wall. 255; *Williams* v. *Pettigrew*, 62 Mo. 472.

Finkelnburg & Rassieur, for respondents, cited: *Riney v. Hill*, 14 Mo. 500.

Hayden, J., delivered the opinion of the court.

This controversy arises upon the final settlement made in the St. Louis Probate Court. John P. Camp, who was a brother of the appellant, died intestate in January, 1868, and the present administrator filed his inventory on March 30, 1868, and on March 1, 1875, offered his final settlement. To this objections were made by different parties; the case was appealed to the Circuit Court, and there referred to a referee, whose report, against various exceptions made, was adopted in full by the court. The administrator appealed to this court, and the case is also here upon writ of error sued out by Augusta H. Camp *et al.*, distributees. The exceptions of the appellant will first be considered.

It is contended that the court below erred in charging the administrator with compound interest at ten per cent per annum upon certain moneys with which he is charged in the account. Certain notes called the McCord and Hammon notes the administrator took credit for as uncollectible; but the evidence showing that amounts were collected on these notes, he was charged accordingly. Upon the basis that there was a failure to report these collections according to law, and that the administrator appropriated the money, he was charged with interest at ten per cent a year thereon, computed with annual rests, and similarly with interest on his ledger account charged as cash used by him. It may be considered that the rule of equity applies (Gen. Stats. 493, sect. 55), and the question is what rule a court of chancery would be governed by. The appellant argues there is nothing to show he made any profit or that the estate could have obtained more than six per cent. But where a trustee uses funds in his own business, or appropriates them, rendering no account, he is liable as

for undisclosed profits. A mere omission to invest is distinguished from the case where the trustee has had the use of money. The charge was correct. *Williams* v. *Pettigrew*, 62 Mo. 472; *Barney* v. *Saunders*, 16 How. 542; *Hook* v. *Payne*, 14 Wall. 252; 1 Am. Ld. Cas. *523, *535. To the effect that the presumption of the use of the money arises from neglect or refusal to account, see *Moore* v. *Beauchamp*, 5 Dana, 77; *Comegys* v. *The State*, 10 Gill & J. 186.

The appellant next complains that there is no evidence that Torlina, Enders & Co., who claim as assignees of one Hafkemeyer, were creditors, or of any assignment to them, and that the judgment in their favor was erroneous. But in the final settlement the administrator takes credit as follows : —

" 1875, Jan'y 2. By Torlina, Enders & Co., bal., allow $299.54 above, and ten per cent. int. pd. by securities on judgt. Pro. Ct. satisfied; costs Pro. Court, $12.50; costs paid shff. $120 = $432.04."

In the same, under date of May 27, 1874, is " Torlina, Enders & Co., *on allow. favor Halsmeyer* — V. 4, $600." It was admitted by the appellant before the referee that on April 17, 1874, the Probate Court ordered the administrator to pay $612.48 allowed to Fr. Hafkemeyer against the estate, and that the order not being complied with, execution issued against the administrator. It is in connection with these entries, and the inference deducible from them, that the report of the referee must be considered. Torlina, Enders & Co. were excepting creditors before the referee, and the latter proceeds to show the method of calculation which he adopted in ascertaining the amounts due on their allowances, which, as he says, were in the fifth class, and the unpaid balances upon which he finds. It would seem that the contest before the referee was as to the amount to be allowed to Torlina, Enders & Co., and as to the method of calculation in respect to interest, not as to the existence

of a valid claim or their ownership of it. Accounts showing the different bases of calculation are made, by agreement, part of the record ; and by the agreement or papers attached it is shown that the administrator claimed that the interest on the allowance of Torlina, Enders & Co. "should be calculated on the whole amount up to October 8, 1877, and then the interest should be calculated on the several payments from the times they were made, and then the aggregate of the payments (and interest) should be deducted from the whole amount of allowance (and interest), and the balance will be the amount due October 8, 1877." The objection now made by the appellant is that there is no evidence that Torlina, Enders & Co. were creditors for any amount, and that it is not shown that Hafkemeyer made any assignment to them, or that he had any claim for any such amount as has been assigned to them. Imperfect as this evidence is, we cannot, in view of what has been stated, and what appears from the conduct and admissions of the parties, sustain the objections as now put.

On the point of the appellees and plaintiffs in error who are distributees being children of a deceased brother of the intestate, it is first objected that the court below erred in not sustaining the exceptions to the report of the referee in allowing the administrator credit for $4,500, the amount of a charge made against the administrator in the ledger of the intestate as due to him from the administrator, and which had been entered as so due in the inventory. It will not be unfair to the distributees to take from the brief submitted on their part the facts on which they rest their objection : —

"This sum of $4,500 forms part of the amount of $8,553.17 which is entered in the inventory as due by William Camp to the estate on open account. According to the testimony as introduced before the referee, this account of $8,553.17 arose in this way : John P. Camp was an unmarried man, living in this city. William Camp was his brother,

and married, and perhaps at the suggestion of his brother came to this city about the fall of 1864. John P. Camp suggested to him, about eighteen months after he came, the buying of a home, and himself went and made negotiations with a man by the name of Forman, who had a small place of about thirty acres with a house on it in Kirkwood, for its purchase for $4,500 in cash, and the balance of $4,000 on time. The deed for the property was made to William Camp, and he executed his note to Forman, the vendor, for the unpaid part of the purchase-money, and executed his deed of trust securing the same. This state of things existed at the time of John P. Camp's death. William Camp at once took possession of the farm, and ever since resided upon it. The amount of $4,500 for the cash payment was furnished by John P. Camp. There was at once entered upon the books of John P. Camp this charge against William Camp for this amount of $4,500. From that time to the time of his death John P. Camp furnished his brother with money to stock the farm and make improvements, and with other money from time to time ; and the amount of these sums, during the whole time, regularly entered upon his ledger, amounted to $4,053.17. It was proved that William Camp had constant access to his brother's books, and looked over the books from time to time ; and it is testified by Mr. Wise that John P. Camp told him that when William Camp saw this charge of $4,500 against him on his books (John P. Camp's books), he expressed his surprise (undoubtedly, because he expected John would make a donation of that sum to him), and that it would be soon enough to determine that when he saw how he himself would come out."

The motive of conduct, often immaterial in legal proceedings, sometimes serves to explain the nature of a transaction. Here the intestate desired to provide a home for himself in the country as well as to assist his brother. The intestate had been embarrassed, his business was hazardous,

and it by no means appears that he intended to give away this property. It is an oversight to treat this transaction as if it were one between strangers. A deed of this real estate from William Camp — whose interest, covered as it was by a deed of trust which he had no means of meeting, was but slight in the property — could probably have been easily procured by his brother. As it was, that brother so held the property as to be able to shift its ownership to suit exigencies. To that end, and to provide for contingencies, — but not necessarily to ultimately charge William Camp, who had neither bought the property nor assented to its buying on the terms assumed, and who intimated dissent as to the charge when he saw it, — the intestate, a man of foresight and business habits, kept his accounts. The evidence tends to show that the intestate regarded the farm as a home for himself as well as for his brother. The fact that after his death one of those peculiar claims which are presented for board and services against dead men's estates was allowed, should not avail as a makeweight to determine the present question, unless we are to argue that because one contract has been implied on what evidence we know not, one other contract should be implied on evidence that is insufficient. If the intestate intended that his brother should become the owner of the property, not by gift but by purchase for a full consideration, he took some but only some of the steps essential to establish this liability. The matter was *in fieri*, and the law takes things as it finds them.

The entry of the total sum in the inventory is fairly explained. It was put in because the administrator was told and believed that the entry was necessary and could be explained upon final settlement. It was put in, as the referee finds, by the witnesses under the advice of a former clerk of the intestate. The remainder of the account just spoken of was charged against the administrator, and this sum, $4,053.17, appears to have been properly charged. It is not

now insisted that the refusal of the referee to allow a credit to the administrator on the ground of his alleged insolvency was error.

We see no sufficient reason for disturbing, upon any of the points now made by either the appellant or the plaintiffs in error, the judgment of the court below. The referee appears to have carefully considered and fairly weighed the evidence, and his conclusions both of law and fact seem to us correct. The judgment will be in all things affirmed. Judge BAKEWELL concurs ; Judge LEWIS is absent.