MICHAEL ENRIGHT, J. W. MURPHY, THOMAS ENRIGHT, J. E. MURPHY, MAGGIE DOWNS, ELIZABETH DOWNS, DELLA McTIGUE, KATHERINE L. FRIDAY, MARY ANN HOUSTON and PAUL MURPHY v. SEDALIA TRUST COMPANY and RICHARD MURPHY, Executors of Last Will of JOHN W. MURPHY, Appellants.—20 S. W. (2d) 517.

Division Two, October 4, 1929.

1044

*A. L. Shortridge, W. D. Steele* and *Montgomery & Rucker* for appellants.

*Bohling & Bohling, Paul Barnett* and *D. S. Lamm* for respondents.

HENWOOD, C.—This controversy originated in the Probate Court of Pettis County, where respondents, residuary legatees under the will of John W. Murphy, deceased, excepted to the final settlement of appellants, executors of the will, on various grounds, including the failure of the executors to account for interest on funds of the estate deposited in the Sedalia Trust Company. The probate court

overruled this exception, holding that the estate was not entitled to interest on funds so deposited, but sustained other exceptions and ordered the executors to file an amended final settlement in conformity with its findings. On the appeal of the legatees, the Circuit Court of Pettis County held that the Sedalia Trust Company should pay interest to the estate in the sum of $10,629.93, and rendered judgment accordingly. From that judgment, the executors have perfected an appeal to this court.

The exceptions of the legatees to the final settlement of the executors and the answer of the executors thereto, filed in the probate court, constitute the pleadings in the case.

Relating to interest on funds of the estate, the legatees say, in their exceptions, that the executors had possession and control of the property and funds of the estate, from May 1, 1919, to November 12, 1924; that the settlements filed by the executors on November 17, 1919, July 20, 1920, December 20, 1922, and November 12, 1924, show balances of money in their hands, varying in amounts from $22,224.53 on November 17, 1919, to $65,372.55 on July 20, 1920; that, throughout the period of administration, the Sedalia Trust Company used the funds of the estate in carrying on its own business and collected interest thereon and did not account therefor to the estate; and that the settlements filed by the executors, including their final settlement of November 12, 1924, do not show any interest on funds in their hands.

In their answer, the executors say that on November 10, 1924, all of the respondents, except Elizabeth Downs, Katherine L. Friday and Mary Ann Houston, with full knowledge of the facts and circumstances, accepted the amounts tendered to them and executed written receipts therefor in full settlement of their respective shares in the estate, in accordance with the final settlement of the executors, and are now estopped from claiming any further interest in the estate; that they were ready, able and willing to make their final settlement of the estate in October, 1920, but were prevented from doing so by the claims of Katherine L. Friday and Mary Ann Houston, and, because of said claims, they (the executors) were compelled to file a suit to have the will construed and to await the final determination of said suit before making their final settlement; and that the Sedalia Trust Company did not use the funds of the estate nor collect any interest thereon, but kept said funds on hand and available at all times for the use of the executors in making their final settlement, and they (the executors) did not receive any interest on the funds of the estate.

The evidence shows that the Sedalia Trust Company was the active executor and the sole depository of the funds of the estate.

Plaintiffs' Exhibits 1 to 6, inclusive, are photographic copies of the Trust Company's ledger sheets, covering a complete account of the banking transactions, or receipts and disbursements, of the executors in the administration of the estate. By permission of this court, granted on appellants' motion, the parties have abbreviated the record by filing here a stipulation as to interest on daily balances in the account of the estate, in accordance with the calculations of plaintiffs' witness E. J. Donnelly, an expert accountant, and by omiting from the record the exhibits above mentioned. As shown by the stipulation, the interest on said daily balances, at the rate of eight per cent, amounted to $14,173.37, on March 17, 1926, the day of the trial in the circuit court; at seven per cent, $12,401.60; at six per cent, $10,629.93.

The plaintiffs' case rests largely upon the testimony of C. C. Evans, secretary and treasurer and managing officer of the Sedalia Trust Company. He was called as a witness for plaintiffs and testified that he actively conducted the administration of this estate, as trust officer of the Trust Company. According to his testimony, the assets of the estate, including real property, notes and stocks, were converted into cash, which was deposited, from time to time, to the account of the executors of the estate in the Trust Company. Except certain deposits for which time certificates were issued, all of the funds of the estate went into the general deposits of the Trust Company and were used by the Trust Company in making loans and in carrying on its general banking business. No separate account was kept of the funds of the estate so used nor of the interest collected thereon. In its usual course of business, the Trust Company charged seven and eight per cent interest on personal loans and five and six per cent on real estate loans. On real estate loans, it charged an additional two or three per cent as a commission for making such loans. Except on active accounts, it paid two per cent on all daily balances over $300, but he instructed the bookkeeper of the Trust Company not to pay anything on the daily balances of this estate, because he considered it an active account and subject to use at any time for the purpose of distribution. The executors were ready to make a final settlement of the estate in 1920, but were prevented from doing so by the claims of respondents Katherine L. Friday, Mary Ann Houston and Paul Murphy and other heirs of John W. Murphy. These claims necessitated a suit to construe the will, which was filed by the executors, as plaintiffs, on March 4, 1920, in the Circuit Court of Pettis County, and finally determined by the decision of this court at the April term, 1924. All of respondents were nonresidents of the State of Missouri and uninformed as to the details of the administration of the estate. Three or four of them requested the executors to send

them copies of the final settlement, but this was not done, because the probate judge advised him that the executors were not required to furnish the heirs with copies of settlements. Afterwards, the probate judge said he had notified the heirs that he would furnish copies of the final settlement for $2.50 per copy. Upon the request of Richard Murphy, co-executor, he sent a copy of the final settlement to the respondent Michael Enright, but the request of the other heirs for copies were merely turned over to the probate judge. Receipts covering the respective amounts due, in accordance with the final settlement, were sent to each of the heirs, together with letters advising each of them that a check for the amount due would be forwarded upon return of the receipt properly signed, but none of the heirs, except Michael Enright, were furnished with a copy of the final settlement, nor with any notice thereof, nor with any information relating thereto. He identified the executors' final settlement (plaintiffs' Exhibit 12), filed November 12, 1924, and the executors' amended final settlement (plaintiff's Exhibit 13), filed May 6, 1925, which were offered in evidence. Concerning deposits of the funds of the estate in the Trust Company, he testified in detail, as follows:

"Q. Now that money, as shown there by the photographic copies which have been introduced in evidence and numbered Exhibits 1 to 6, inclusive, went into the general deposits of the bank like any other deposit, did it not? A. Yes, sir.

"Q. It wasn't held separate? A. No, sir.

"Q. And it wasn't held as a special account? A. No, sir.

"Q. And it wasn't segregated from the general deposits of the bank? A. No, sir.

"Q. In other words, it was like any other deposit? A. Yes, sir.

"Q. And you use these bank deposits in making loans just like any other bank or trust company? A. Yes, sir.

"Q. Except that you, from your general deposits, do reserve a certain amount required by the state law? A. Yes, sir.

"Q. How much is that reserve? A. Fifteen per cent of our deposits.

"Q. In other words, up to a certain amount the money which was in the Murphy estate and which went into the general deposits of the Trust Company, *the Trust Company used in making loans and doing the business of the Trust Company and earning interest on it? A. Yes, sir.*

"Q. In fact, that is the way the Sedalia Trust Company, who is executor of this estate, makes most of its money, by loaning out the general deposits? A. Yes, sir.

"Q. With the exception of what you may have taken out of the John W. Murphy account and placed in time deposit certificates,

all of the money derived from the sale of assets or any other source, which belonged to the Murphy estate, was kept in the general deposits of the Sedalia Trust Company and went to swell its general assets? A. Yes, sir.

"Q. But up to the point of that reserve you loaned the money and funds you derived from the assets of this estate, is that correct or not? A. Yes, sir.

"Q. You loaned them all out? A. Yes, sir.

"Q. Now in your settlement, one of your settlements, you show on July 20, 1920, you had a balance on hand of $65,372.55 in cash, is that correct? A. The statement shows it.

"Q. And that was in the general deposit of the Trust Company and was being loaned out by the Trust Company and earning interest for the Trust Company, wasn't it? A. Yes, sir.

"Q. That is, it went to swell the deposits and was so shown in the statements of the Sedalia Trust Company? A. Yes, sir.

"Q. And you loaned it out, that is correct, isn't it? A. Yes, sir.

"Q. Just as you would any other money? A. It wasn't segregated. We didn't loan it out as a separate item, it went into our loans.

"Q. But it was in the general funds of the Trust Company? A. Yes, sir.

"Q. And you loaned it out as you would any other money and received interest on it? A. Yes, sir."

The following is taken from his cross-examination along the same line:

"Q. Did you ever make a loan for the Murphy estate? A. None.

"Q. Now when you stated that the money was placed in the Trust Company and you made loans, do you mean you loaned out the Murphy estate money? A. No, sir.

"Q. You simply loaned money which was on deposit in your bank? A. Yes, sir.

"Q. Everybody's money, as any other bank does in order to operate? A. Yes, sir.

"Q. When you stated yesterday the money had been loaned, do you mean the money was deposited in the bank as other customers' money was, and if you made a loan the loan was out of the general deposits? A. Yes, sir.

"Q. In other words, you never loaned the Murphy money whatever and collected interest on it? A. No, sir.

"Q. Now, Mr. Evans, did the fact that there was some money belonging to the Murphy estate deposited in your bank did that increase your capacity to make loans or didn't, or wouldn't you have made the same loans if that money hadn't been there? A. Yes, sir.

"Q. In other words, was this money on deposit there in an uncertain condition, that is, you didn't know when you were going to be called on to pay it out, therefore, did that money swell your assets and place you in position to make loans you couldn't have made without it? A. No, sir."

In connection with his cross-examination, this witness identified receipts dated November 10, 1924, and signed by all of the respondents, except Elizabeth Downs, Katherine L. Friday and Mary Ann Houston, and nine other heirs, in which said respondents and other heirs acknowledge full settlement of their respective shares of the estate, and said receipts were offered in evidence by defendants. He further testified, on cross-examination, that, prior to signing the receipts mentioned, some of the heirs, including some of respondents, contended that they were entitled to interest on the funds of the estate, and that the respondent Paul Murphy and his guardian, at the time his receipt was signed, agreed not to make any claim for interest. He was interrogated, on redirect examination, as follows:

"Q. Mr. Evans, Mr. Shortridge questioned you about loaning out the Murphy estate money. You said you didn't, *but you don't mean to say when you say that, that the Murphy estate money was not in the general deposits of the bank?* A. *No, sir, it was there.*

"Q. *And your loans were made out of the general deposits of which the Murphy estate money constituted a part?* A. *Yes, sir.*"

Paul Barnett, of counsel for plaintiffs, testified that he was Paul Murphy's attorney at the time he gave his receipt for his share of the estate, in accordance with the final settlement; that he did not know, at the time, the executors had failed to account for interest on funds of the estate deposited in the Trust Company; and that the matter of interest on funds of the estate did not arise and was not discussed at that time. On cross-examination, he said: "I joined in the claim for interest as quick as I found no interest was accounted for."

Mr. A. L. Shortridge, of counsel for defendants, was the only witness called by defendants. He testified that, on several occasions prior to the time Paul Murphy signed the receipt for his share of the estate, his mother, who was his guardian, contended that the executors should pay interest on funds of the estate deposited in the Trust Company.

Matters appearing in some of the exhibits and other matters in evidence will be referred to in the further discussion of the case.

Originally, the circuit court sustained the executors' motion to dismiss the appeal from the probate court, on the ground that the judgment of the probate court on the issue of interest was not a final judgment and therefore the circuit court was without jurisdiction.

Later, on motion of the legatees, the order dismissing the appeal was set aside and the case heard on its merits. The circuit court, sitting in equity, found the issues for the plaintiffs; that the Sedalia Trust Company, as the active executor and sole depository of funds of the estate, commingled the funds of the estate with its general deposits, and, as a part of its general deposits, used the funds of the estate in making loans, and collected from five to eight per cent interest thereon, and failed to account to the estate therefor; that no separate account was kept of the funds of the estate so loaned nor of the interest collected thereon, and, no separate account thereof being available, the Sedalia Trust Company should, in equity, be required to pay the estate six per cent interest on daily balances in the account of the estate; and, in accordance with its findings, adjudged that the Sedalia Trust Company pay the estate the sum of $10,629.93, together with interest thereon at the rate of six per cent per annum from the day of judgment, May 3, 1926; that the executors make distribution thereof according to law; and that a transcript of its record and proceedings be certified to the probate court.

I. Counsel for appellants first contend that, because the probate court held, on the exceptions of the legatees, that the final settlement of the executors, filed November 12, 1924, was not a full and complete final settlement and ordered the executors to  file an amended final settlement in conformity with its findings, and because such amended final settlement was later filed, on May 6, 1925, the judgment of the probate court in disallowing the legatees' claim of interest on funds of the estate was not a final judgment, and therefore the appeal of the legatees from that judgment was improperly allowed and the circuit court did not acquire jurisdiction of the case. We do not agree with counsel in this contention.

Section 282, Revised Statutes 1919, provides that "appeals shall be allowed from the decision of the probate court to the circuit court, in the following cases: . . .; second, *on all settlements of executors and administrators;* . . . fifteenth, and in all other cases where there shall be *a final decision of any matter arising under the provisions of articles I to XIII, inclusive, of this chapter."* (Our italics.)

The record shows that, on February 19, 1925, a hearing was had in the probate court on the exceptions of the legatees to the final settlement of the executors, filed November 12, 1924; that the probate court found and adjudged that the estate was not entitled to any interest on funds deposited in the Sedalia Trust Company, and accordingly overruled the exception relating thereto, but sustained other exceptions, including one relating to overcharges in the com-

missions of the executors, and ordered the executors to file an amended final settlement in conformity with its findings and judgment on such exceptions; that, in due time, the legatees filed their application and affidavit for an appeal and were allowed an appeal to the circuit court, solely on the ground that they were aggrieved by the decision of the probate court in holding that the estate was not entitled to any interest on funds deposited in the Sedalia Trust Company; that the amended final settlement of the executors, filed and approved May 6, 1925, shows only the refund of overcharges in the commissions of the executors in the sum of $2,288.34, under the title of "Receipts," and only the distribution of said refund among the heirs of the estate, under the title of "Disbursements."

It seems perfectly clear, from the record, that the decision of the probate court on the issue of interest involved a "settlement of executors" and was a "final decision" of a matter arising under the provisions of our administration law. The order requiring the executors to file an amended final settlement related to other matters and did not leave open for any further consideration, by the probate court, the question of interest on funds of the estate. We are amply supported in this conclusion by the rulings of this court in Branson v. Branson, 102 Mo. 613, 15 S. W. 74; McCrary v. Menteer, 58 Mo. 446; Ruff v. Doyle, 56 Mo. 301. The legatees were properly allowed an appeal from the judgment of the probate court on the issue of interest, and the hearing afforded them on that issue in the circuit court was a proper exercise of that court's appellate jurisdiction.

II. It is provided in Section 223, Revised Statutes 1919, that: "The court shall, at each settlement, exercise an *equitable control in making executors and administrators account* for interest received by them on debts due the estate, and *for interest accruing on money belonging to the estate, loaned or otherwise employed by them;* and for that purpose may take testimony or examine the executor or administrator on oath." (Our italics.) And our appellate courts have held that cases of this character are in the nature of equity cases and triable as such in the probate court and the circuit court and upon appeal from the circuit court. [Perkins v. Silverman, 284 Mo. 238, 223 S. W. 895; Rash v. Rash (Mo. App.), 256 S. W. 525.] Accordingly, our consideration of this case must be *de novo*, as in all equity cases.

III. Counsel for appellants further contend, in their brief, that "under the facts in this case and the law applicable thereto, the executors were only chargeable with interest at the rate of two per

cent compounded annually." The law referred to is Section 11801, Subdivision 9, Revised Statutes 1919, which says: "Unless otherwise provided in the instrument creating the trust, on·all sums, not less than one hundred dollars, *which shall be held* by a trust company in any fiduciary capacity, or as depository of moneys paid into court, *interest shall be allowed by such trust company at not less than the rate of two per centum per annum, compounded annually,* until the moneys so received shall be duly expended or distributed." (Our italics.) Concerning the statute of which the above quoted provision is a part, this court has said.: "This authority is not given to trust companies as a convenient incident to the conduct of their ordinary business. The Legislature was not considering the prosperity of trust companies, but was looking for ·the safety of certain important trust funds which are attended with the natural insecurity and danger of dissipation, making them the especial and peculiar concern of the law. The legislative purpose was not to confer a privilege upon trust companies, but to seek additional sources of security for those funds." [State ex rel. Bank v. Duncan, 302 Mo. 1. c. 144, 257 S. W. 1. c. 788.] And, of course, the Legislature did not intend, by imposing a minimum interest charge of two per cent, compounded annually, on trust funds *"held"* by a trust company as a trust offcer or as a depository, to permit a trust company, while so acting, to escape a full accounting of all interest actually realized on trust funds. Indeed, it is said by counsel, in their brief, that "the provision that the Trust Company shall pay to the estate not less than two per cent per annum, compounded annually, *implies that there are circumstances under which a trust company should pay more than two per cent."* (Our italics.) So, concededly, Subdivision 9 of Section 11801 is in harmony with the general provision in Section 222, Revised Statutes 1919, which says that "all interest received by executors or administrators on debts due to the deceased shall be assets in their hands; and *if they lend the money of the deceased, or use it for their own private purposes, they shall pay interest thereon to the estate;"* and the further provision in Section 223, above quoted, which says that "the court shall exercise *an equitable control in making executors and administrators account for interest received."* on funds of the estate so loaned or employed. (Our italics.) Counsel also say, in their brief: "Aside from this two per cent allowed by the statute, there is no arbitrary rule on the rate of interest, and, before a court of equity will charge appellants with interest at a higher rate, *the circumstances of the case must show that it is right and just to do so."* (Our italics.) We fully agree with counsel in this statement, which means that the

only question left for our determination is what amount of interest, under the particular facts and circumstances of this case, the Sedalia Trust Company should be required to pay.

In contending that the Trust Company should not be required to pay more than the minimum rate of two per cent, as fixed by Subdivision 9, Section 11801, counsel argue that it did not loan the funds of this estate nor receive any interest thereon. On the record before us, this argument cannot be seriously considered. From the testimony of the Trust Company's own managing officer, who acted for it as the active executor of this estate, it plainly appears that the funds of this estate, as a part of its general deposits, were used in making loans and that from five to eight per cent interest was collected on its loans. ''A trustee is accountable for all interest or profits actually received by him from the trust fund, whether used in his private business or otherwise employed by him. Under no circumstances will he be permitted to retain any benefit or advantage from the trust fund, except his compensation or commissions.'' [Cruce v. Cruce, 81 Mo. l. c. 684. See also, State ex rel. Welch v. Morrison, 244 Mo. 193, 148 S. W. 907; Wolfort v. Reilly, 133 Mo. 463, 34 S. W. 847; Smiley v. Smiley, 80 Mo. 44; In re Davis, Executor, 62 Mo. 450; Green v. Hussey, 96 Mo. App. 295, 70 S. W. 156; In re Camp, Administrator, 6 Mo. App. 563.] And we have expressly held, that, where an executor uses trust funds for his own private purposes, the statute (Sec. 222), requiring him to pay interest thereon, is *mandatory*. [Wolfort v. Reilly, supra; State ex rel. Welch v. Morrison, supra.] Needless to say, the fact that the executor under attack happens to be a trust company does not change the rule. [Subdiv. 6, Sec. 11801, R. S. 1919; State ex rel. Bank v. Duncan, supra; St. Paul Trust Co. v. Kittson, 62 Minn. 408; 1 A. L. R. 1647.] Nor can it escape liability because it had on hand ample funds, at all times, to meet the demands of creditors and legatees. Its mere ability to pay at any time does not absolve it from the payment of interest on funds commingled with its own funds and used by it in carrying on its own business. ''If this were so, any administrator of large means or resources might constantly use the funds in his hands in his business and realize large profits therefrom without paying interest for the use of such fund. This the law will not permit.'' [Wolfort v. Reilly, supra.] See ruling to same effect in Green v. Hussey, supra.

Nor does the delay in making final settlement, caused by the suit to construe the will, make any difference. [31 L. R. A. (N. S.) 362,

IX.] Nor is it relieved from liability by the failure of the heirs to have the result of said suit certified to the probate court. The Trust Company was a party to the suit and had full knowledge thereof, and, as active executor of the estate, should have attended to such certification itself.

Nor are the respondents estopped from claiming interest on the funds of the estate because they failed to make such a claim until after the executors filed their final settlement. Nor are those respondents who signed receipts in full settlement of their respective shares in the estate, in accordance with said final settlement, estopped from making such a claim. None of the respondents were residents of this State, and it is established, by the greater weight of the evidence, that none of them knew of the failure of the executors to account for interest on funds of the estate until after the executors' final settlement was filed, and that some of them were not advised of this fact until after they had signed the receipts mentioned.

Nor was the action of the probate court, in failing to require the executors to account for interest at each settlement, a final action on that question. True, Section 223 says that "the court shall, *at each settlement,* exercise an equitable control in making executors and administrators account for interest." (Our italics.) But, this court has held that an executor may be required, on final settlement, to pay interest on trust funds used for his own private purposes, although he was not required to pay interest on such funds at the time of his annual settlements. [In re Davis, Executor, supra.] Moreover, it has been repeatedly held that partial settlements are open to correction or modification at the final settlement and become a part of the final settlement when such settlement is approved. [In re Wickard's Estate (Mo. App.), 282 S. W. 173, and cases cited.]

The Trust Company charged from five to eight per cent interest on its loans, but no record was kept of the actual amount loaned out of the funds of this estate, nor of the interest received thereon. In the absence of such a record, the daily balances in the account of the estate may be taken as a proper basis of calculation in determining the amount of interest the Trust Company should be required to pay. The parties have stipulated, in accordance with the calculations of the witness Donnelly, that the interest on daily balances, at the rate of six per cent, amounted to $10,629.93, on March 17, 1926, the day of the trial in the circuit court. As above shown, the circuit court fixed the Trust Company's liability at that amount. together with six per cent interest thereon from May 3, 1926, the day of the

1058

judgment. We are not inclined to say that it should pay more or less. After a very careful examination of the whole record, we find ourselves in full accord with the views of the circuit court. On the facts of this case and the authorities cited above, the judgment rendered below is right, just and equitable.

The judgment is accordingly affirmed. *Davis* and *Cooley, CC.,* concur.

PER CURIAM:—The foregoing opinion by HENWOOD, C., is adopted as the opinion of the court. All of the judges concur.