In the ESTATE OF Delbert S. WENZLICK, Deceased.

Ann Ridgley WENZLICK, Objector-Respondent.

v.

Harold Albert WENZLICK and Michael J. Ebeling, Executors-Appellants.

No. 46438.

Missouri Court of Appeals, Eastern District, Division Two.

Feb. 11, 1986.

Rehearing Denied March 19, 1986.

Application to Transfer Denied April 15, 1986.

Robert W. Copeland, Clayton, for objector-respondent.

Michael J. Ebeling, St. Louis, for executors-appellants.

SIMON, Presiding Judge.

Appellants, Michael J. Ebeling, and Harold Albert Wenzlick, co-executors of the estate of Delbert S. Wenzlick (decedent), appeal from an order of the Probate Division of the St. Louis County Circuit Court sustaining objections by Ann Ridgley Wenzlick, surviving spouse, to the second updated final settlement and the petition for distribution filed by the executors and surcharging the executors $154,073.46 to correct the amount available for distribution. This figure was obtained by substracting the amount the executors found was available for distribution in their second updated final settlement, $268,069.69, from the amount the trial court determined was the correct balance, $422,143.15. Although the record does not clearly set this forth, appellant, Michael J. Ebeling, is an attorney and is acting as attorney pro se for himself and for Harold Albert Wenzlick.

Delbert S. Wenzlick died testate on January 12, 1979. In accordance with his will, his son, Harold Albert Wenzlick, and Michael J. Ebeling were appointed co-executors. Ebeling also acted as the attorney for the estate. Decedent made a specific bequest of the family home, "Whitehaven," and the items attendant thereto to his wife, Ann Ridgley Wenzlick. He left one-half of his shares in Wenzlick-Stevener & Company, a real estate company, to his son, Harold Albert Wenzlick, and the other half to Ralph H. Stevener, his business partner. Other specific bequests were made and the remainder of the estate went into two separate trusts with Ann Ridgley Wenzlick and Michael J. Ebeling as co-trustees of each trust. The income from Trust 1 to be paid to Ann Ridgley Wenzlick in equal monthly payments and the income from Trust 2 to be paid to maintain "Whitehaven" with the remainder to be distributed to decedent's sister, son, daughter, and grandchildren until the death of Ann Ridgley Wenzlick, at which time the principal will be divided among the income recipients.

Michael J. Ebeling, as co-executor, filed an application for letters testamentary approximately two and one-half months after decedent's death. Subsequently, he filed five separate settlements: (1) an interim settlement on June 15, 1979; (2) a semi-annual settlement on August 13, 1979; (3) a final settlement on December 19, 1979; (4) a corrected final settlement on May 2, 1980; (5) a second updated final settlement on October 30, 1980. The second updated final settlement indicated that after all the liabilities of the estate had been provided for, $268,069.69 was available for distribution.

Ann Ridgley Wenzlick, by her attorney, filed seventeen objections to the second updated final settlement. It is from the probate court's order on these objections that the co-executors appeal.

On review, we shall sustain the order of the trial court if it has substantial evidentiary support, is not against the weight of the evidence, and it properly declares and applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

Appellants' brief is inartfully written, but after an extensive examination of the

record, we were able to glean from it the necessary information for our review. *See Thummel v. King,* 570 S.W.2d 679 (Mo. banc 1978). On appeal, appellants contend that the trial court erred in: (1) surcharging the executors for interest which should have been earned on estate assets which were left idle; (2) surcharging the executors for unearned interest for the premature payment of federal estate and state inheritance taxes; (3) ordering the executors to pay $30,000 plus interest to the estate representing the sales commission paid to Wenzlick-Stevener & Company for the sale of estate realty; (4) reducing the total executors' fee to $5,000 and surcharging the executors in the amount of $25,-981.84 the difference between the amount they paid themselves and the $5,000; (5) failing to allow reimbursement to the executors for attorney's fees advanced by them for litigation incident to Ann Ridgley Wenzlick's objections to the settlements; (6) allowing only $1,040.80 for "cost of administration;" (7) calculating the principal and interest on a deed of trust; and (8) destroying part of the probate hearing transcript. We affirm in part and reverse and remand in part.

■ As a result of the trial court's order, the co-executors must account for, or pay back, into the estate the sum of $154,073.46. We are cognizant that this is a large sum of money for which the executors are held responsible; however, it is the duty of an executor of an estate to preserve and to protect the estate for the benefit of all the interested parties. *State ex rel. Madden v. Sartorius,* 349 Mo. 1054, 163 S.W.2d 987, 989[1] (Mo. banc 1942). *See also Columbia Union National Bank and Trust Company v. Bundschu,* 641 S.W.2d 864, 875[7] (Mo.App.1982); *In re Alexanders' Estate,* 360 S.W.2d 92 (Mo. 1962). Where an executor or administrator breaches this duty the probate court has statutory authority to remove him, § 473.-140 RSMo 1978, surcharge him for any loss caused by his breach, § 473.597 RSMo 1978, and reduce the compensation due him as an executor or administrator, § 473.-153(4) RSMo 1978.

■ The trial court was within the boundaries of its authority in surcharging the executors for interest which should have accrued on estate funds had they been prudently invested instead of left idle, and for interest which should have been earned on money used to prematurely pay taxes, as well as reducing the executor's fees to $5,000 because of the gross mismanagement of the estate by the executors.

■ The trial court also properly required the executors to return to the estate $30,000, plus interest which was paid to Wenzlick-Stevener & Company as a commission for the sale of estate realty. When the sale of real property is made by an executor of an estate it is presumed that the executor will himself make the sale. If he chooses to employ an agent to perform this task he cannot pay the agent out of estate funds. *In re Claus' Estate,* 167 S.W.2d 372, 374 (Mo.App.1943). If the executor elects to forego his statutory fee by paying an agent a commission for making the sale, the fee to the agent cannot exceed the equivalent of the statutory percent governing executor fees of the money received from the sale. *In re Claus' Estate,* 167 S.W.2d at 374.

■ The executors received executor fees. There is no evidence that executors' fees were declined and sale commission substituted as their compensation. Furthermore, Harold Albert Wenzlick in answering interrogatories related to this case admitted that no agents were employed to sell the real estate, and no order of the court was sought to do so because the will provided that the executors were to sell the property at their discretion. Furthermore, co-executor Wenzlick owns a substantial portion of the stock of Wenzlick-Stevener & Company, the company which acted as the real estate agent.

Appellants' contention that the trial court erred in not allowing reimbursement to the executors for attorney's fees allegedly incurred incident to this litigation is

meritless. Section 473.155.2 RSMo Cum. Supp.1984 provides:

> 2. If the personal representative is an attorney, no allowance shall be made for legal services performed by him or *at his instance* unless such services are authorized by the will or by order of the court or are consented to by all heirs and devisees whose rights may be adversely affected by the allowance. (Emphasis added.)

Appellant Ebeling, as an attorney and co-executor, is clearly governed by this section. As to the attorney fees for which reimbursement is requested, the record does not indicate an order of the court, or provision in the decedent's will authorizing such an expenditure nor is there any evidence that the appropriate permission was given by the heirs or devisees. There is no evidence in the record that conclusively indicates that the money paid to the outside attorneys by the executors was actually for services rendered in connection with the present litigation. Consequently, the trial court was correct in not reimbursing the executors for the attorney's fees.

Appellants' objections to the transcript on appeal and the issues stemming from the irregularities found in the recordings of the probate hearing were clearly resolved by the actions of the parties and an order of our court.

This court, being aware of the difficulties encountered in the preparation of a transcript for this appeal, issued an order which provided:

> From the record, it is this court's understanding that the master tape of the record of the hearing before the trial court is not available, that each of the parties has a tape of the hearing and that each of these latter tapes was not recorded from the master tape. Based upon this understanding, the Court now orders each party to file a copy of a proposed transcript of the hearing in question on or before December 20, 1984. If either party then files a written, signed and acknowledged unconditional consent that the other party's proposed transcript is acceptable as the transcript for this appeal on or before December 31, 1984, this appeal shall be placed on the regular docket and regularly processed for disposition.

Appellants submitted a transcript to this court and a copy to the respondent with an attached letter which read in part:

> On your recent "Suggestions in Opposition" you indicated for the first time what we hoped was a willingness to help provide a proper transcript for the Appellate Court. This offer was eagerly approved by us, and could serve us the solution in view of the unfortunate destruction by the trial court of its tapes, in spite of our notice to "tape custodian" in December 1980 that an appeal was contemplated. The destruction was prior to judgment by the trial court. And, as an officer of the court we would assume you desire to aid justice, not defeat it. . . . Mainly, at this time we wish you to be aware that we have done and are doing everything in our power, and we urge you to sign acknowledging and approving the enclosed transcript so that the Appeal may proceed as intended by the Rules of the Missouri Appellate Courts.

■ In response to this court's order and appellants' letter, respondent formally consented in writing to the appellants' transcript. Thus, the parties agreed to the truth and accuracy of the transcript as is required. Rule 81.14(e). Therefore, the transcript compiled and submitted by appellants is satisfactory for this appeal and their objections thereto will be denied.

■ We find no error in the trial court's assessment of the principal and interest for which the executors failed to account on a deed of trust. We find no evidence to controvert the trial court's finding.

■ As to appellants' assertion that the trial court erred in allowing executors only $1,040.80 costs incurred in administering the estate, we must remand to the circuit court for further evidentiary findings. The record indicates that $1,213.95 was paid to the Probate Division of the Circuit Court of

St. Louis County for court costs relating to the probate of the Wenzlick estate, but the record does not reflect the payor of these costs. Therefore, it is necessary to remand this matter to the trial court to determine the origin of the payment of the court costs. If it is found that the executors paid the $1,213.95 in probate court costs or any portion thereof, we direct the trial court to modify its decision by crediting the executors the amount they paid in court costs. Otherwise, the judgment is affirmed in all other respects.

Judgment affirmed in part and reversed and remanded in part.

STEPHAN, C.J., and KELLY, J., concur.