## In the ESTATE OF Donald R. ALEXANDER.

### No. WD 64651.

Missouri Court of Appeals, Western District.

Sept. 20, 2005.

Paul H. Gardner, Jefferson City, for Appellant.

Erik Bergmanis, Camdenton, David Yarder, Versailles, for Respondents.

PAUL M. SPINDEN, Judge.

The heirs of Donald R. Alexander's estate appeal the circuit court's judgment denying their request to remove Bonnie Wolf as personal representative of Alexander's estate and their request for an award of interest on the money judgment entered by the circuit court in favor of the estate. We affirm the circuit court's judgment.

Alexander and his wife, Maudie Alexander, executed a joint and mutual will on January 25, 1980. Article 1 of the will provided that neither Alexander nor his wife would revoke, change, alter, or amend the will "except that prior to the death of either of us this Will may be changed, canceled, annulled or amended by another Will or by a Codicil, duly executed by both of us." Alexander and his wife made no amendments, changes, or modifications to the will before their deaths.

The will provided that upon the death of the first to die, the other spouse would have full power to all of the property. Upon the death of the second to die, the

property was to be held in trust for their daughter, Doris Jean Alexander. Upon the death of their daughter, the residue of the estate was to be divided among Maudie Alexander's siblings: one-third to Herbert Martin or his descendants, one-third to Ruth Hallam or her descendants, and one-third in trust for James Martin. Upon James Martin's death, the will instructed that the trust should terminate and that the remainder of the assets should be distributed to Herbert Martin and Hallam or their descendants. Maudie Alexander and Doris Jean Alexander died before Donald Alexander died.

On August 5, 1993, Donald Alexander executed a revocable living trust agreement. Kenneth Oswald, an attorney, prepared the living trust according to Alexander's request and direction. The trust named Alexander as "grantor" and Bonnie Louise Wolf as "trustee." The trust provided that upon Alexander's death the trust estate was to be distributed equally to Robin Barry, Ruth Hallam, Donna Henley, Stephanie and Laura LaDuke, and Bonnie Wolf. The trust also provided for a share to Pat Gray and to Bobbie Jones if they were caring for Alexander at the time of his death.

During September 1993, Wolf established an account for the trust at her bank in Pinehurst, North Carolina. Pursuant to written instructions from Oswald, Wolf removed funds from certificates of deposit owned by Alexander from his account at Mercantile Bank of Lake of the Ozarks and deposited the funds into the North Carolina account. The funds removed by Wolf and transferred to the trust account were calculated to equal the amount of Social Security benefits received by Alex-

ander since the death of his wife, plus interest, totaling $68,890.62.

Alexander died on May 8, 1995, while he was domiciled in Miller County. The probate court admitted the joint and mutual will as Alexander's last will and testament. The probate court appointed Wolf as personal representative of the estate after the named personal representative, Mercantile Bank of Eldon, declined to accept the appointment. Wolf filed an inventory of the estate, which showed assets of $25,970.12. This amount did not include the funds transferred to the living trust.

After Alexander's death, Wolf made distributions from the living trust of $5,000 to Gray and Jones, pursuant to a settlement agreement entered into by the trust beneficiaries. Wolf also distributed $12,000 to Barry, Hallam, and Henley; a total of $12,000 to Stephanie and Laura LaDuke; and $11,890.62 to herself.[1]

Herbert E. Martin, James E. Martin, and Patricia Ann Martin as descendants of Herbert Martin and Hallam are the surviving heirs under the joint and mutual will. In December 1995, they filed their petition for discovery of assets, removal of personal representative and revocation of independent administration with the circuit court and filed an amended petition during January 1996.

After a bench trial, the circuit court found that the money paid out of the living trust was an asset of the probate estate and ordered that it be paid back to the estate. The circuit court entered money judgments for Alexander's estate against Jones for $5,000, Gray for $5,000, Henley for $12,000, Wolf for $11,890.62, and Hallam for $12,000. The court also ordered that the money judgment against Hallam

1. From the total of $69,890.62 distributed from the living trust, Barry and Stephanie and Laura LaDuke returned their distribu- tions totaling $24,000 to Alexander's estate pursuant to a compromise of debts due the estate approved by the court.

was to be offset by the amount she was entitled to receive under the joint and mutual will. The circuit court found no just cause for removing Wolf as personal representative and ordered that all payments made on the money judgment should be made to the personal representative for deposit into the estate's account. The court found in favor of the defendants on the remaining claims contained in the petition.

On September 9, 2004, Herbert E. Martin, James E. Martin, and Patricia Ann Martin filed a motion to amend the judgment to award prejudgment interest and to remove Wolf permanently as personal representative of the estate. The circuit court overruled this motion. Herbert E. Martin, James E. Martin, Patricia Ann Martin, and Hallam appeal the circuit court's judgment.

In their first point, Alexander's surviving heirs contend that the circuit court erred in refusing to remove Wolf as the personal representative of Alexander's estate.[2] They assert that Wolf's interests are antagonistic to the estate because she adversely withheld estate assets that she distributed to herself and because she breached her duty to look after the interest of the estate by not seeking trust distributions and interest on the money judgment awarded by the circuit court. We disagree.

Section 473.140, RSMo 2000, says:

If any personal representative becomes mentally incapacitated or is convicted of a felony or other infamous crime, or becomes an habitual drunkard, or in any manner incapable or unsuitable to execute the trust reposed in him, or fails to discharge his official duties, or wastes or mismanages the estate, or acts so as to endanger any corepresentative, or fails to answer any citation and attachment to make settlement, the court, upon its own motion, or upon complaint in writing made by any person interested supported by affidavit, after notice to the personal representative, and to the attorney of record, if any, of any personal representative who cannot be served with notice in this state, shall hear the matter and may revoke the letters granted.

The circuit court found that at all times Wolf followed the advice of counsel in the actions she took to fund and distribute from the living trust, and, although the circuit court did not agree with the legality of the trust, the circuit court found no just cause for removing Wolf as personal representative.

Although the trust was improper as found by the circuit court, this did not render Wolf incapable or unsuitable to execute the trust reposed in her, as Alexander's heirs contend. No evidence exists in the record of bad faith, fraud, dishonesty, or an attempt to wrongfully deprive the heirs of property lawfully theirs, or an attempt to convert the property wrongfully to Wolf's use. *In re Schwidde's Estate*, 363 S.W.2d 585, 589 (Mo.1963). Instead, the record establishes that Wolf, acting on the advice and the direction of counsel, transferred funds from Alexander to the trust and distributed the trust's corpus in her capacity as trustee in accordance with the trust's terms. These actions did not

---

**2.** To the extent that Wolf and the other trust beneficiaries contend that no complaint in writing was made by a person interested supported by affidavit to remove Wolf as personal representative, Section 473.140, we disagree. Alexander's heirs filed a First Amended Petition for Discovery of Assets, Removal of Personal Representative and Revocation of Independent Administration, which was a complaint in writing made by an interested person supported by affidavit.

render her incapable or unsuitable to execute the trust reposed in her as personal representative of Alexander's estate.

Alexander's heirs assert that a conflict of interest exists between Wolf's personal interest as a beneficiary of the living trust and her fiduciary duties to the estate as personal representative. The conflict that exists, however, is between the terms of the living trust and the terms of the Alexanders' will and are not due to any of Wolf's acts. Wolf merely distributed the assets of the trust in her capacity as trustee and in accordance with the terms of the trust, which was drafted according to Alexander's direction.

■ Alexander's heirs also contend that the circuit court erred in not awarding interest on the judgment it entered in favor of the estate. They assert that, because the funds distributed through the living trust were adversely withheld from the estate, Section 473.340.3, RSMo 2000, required the circuit court to assess interest on the judgment. We disagree.

Section 473.340.3 says in part:

If the party found to have adversely withheld the title or possession, or both, of said property has transferred or otherwise disposed of the same, the court shall render a money judgment for the value thereof with interest thereon from the date the property, or any interest therein, was adversely withheld.

Even assuming that the trust beneficiaries adversely withheld property belonging to the estate, the record does not establish that the trust beneficiaries "transferred or otherwise disposed of" the money distributed to them by the trust. The circuit court merely ordered the "return of the monies distributed from the Living Trust"; it did not render a money judgment against the trust beneficiaries for the value of the property because they had transferred or otherwise disposed of the property. Hence, interest was not mandatory in this instance.

■ To the extent that Alexander's heirs contend that they are entitled to interest pursuant to another portion of Section 473.340.3, they are also mistaken. Section 473.340.3 says:

In addition to a judgment for title and possession, or either, or for the value thereof, the court may enter a judgment for all losses, expenses and damages sustained, if any, but not including attorney fees, if it finds that the property was wrongfully detained, transferred or otherwise disposed of.

An award under this provision is not mandatory but is a matter within the circuit court's discretion. The circuit court did not err in not awarding interest on the judgment.

We affirm the circuit court's judgment.

LISA WHITE HARDWICK, Presiding Judge, and PATRICIA A. BRECKENRIDGE, Judge, concur.