**In the ESTATE OF Earl YOUNG, decedent.**

**No. ED 86180.**

Missouri Court of Appeals, Eastern District, Division Three.

March 7, 2006.

Mark Belz, Clayton, MO, for appellant.

Alan E. Dewoskin, Clayton, MO, for respondent.

BOOKER T. SHAW, Judge.

This is an appeal from a judgment in favor of the Estate of Earl Young against the former independent personal representative, Savannah Holliday ("Holliday"). Denise Hill, Adelbert Brown, and Ethel Echols (individually, "Hill", "Brown" and "Echols" collectively, "heirs" [1]) appeal the judgment contending that the probate court erred in using a rate of interest other than nine percent per annum pursuant to Section 408.020, RSMo 2004 [2] in determining the amount of interest owed to the estate. We affirm.

### Facts and Procedural History

The record on appeal lacks clarity. However, this Court adduces the facts as follows: Earl Young died on September 26, 1998. Savannah Holliday, his sister, filed for letters of administration authorizing independent administration. She declared herself as the sole heir and was appointed personal representative. *See* Section 473.480.[3]

---

1. Mark Belz, as successor administrator d.b.n. of the Estate of Earl Young, was also named as an appellant in this case.

2. All statutory references are to RSMo 2004, unless otherwise indicated.

3. As the personal representative of an independent estate, Holliday was not required to

In 2001, Hill and Brown filed a Petition for Determination of Heirship, contending that they were Earl Young's grandchildren. The record reveals Hill and Brown did not proceed on this heirship petition until late summer 2003. On March 25, 2004, a petition for the discovery of assets was filed.[4] On April 30, 2004, Echols joined the heirship petition claiming she was Earl Young's daughter.

On November 14, 2003, Holliday resigned as personal representative and a public administrator was appointed. On February 4, 2004, Holliday was ordered to show cause why she should not be surcharged pursuant to Section 473.597.[5] Holliday filed her final "Settlement to Resignation" on February 23, 2004. She attached an accounting of the transactions in the estate as reflected on the estate's bank statement held by Bank of America, N.A. The statement reflects that Holliday withdrew funds from the account for her personal use. It also showed Holliday made no withdrawals once the heirship petition was filed. On March 30, 2004, Holliday was ordered to return any estate assets in her possession to the public administrator.

The heirs of Earl Young were determined by a judgment of the probate court, and affirmed by the circuit court, dated January 3, 2005. The probate court found Hill and Brown to be grandchildren of Earl Young and awarded each of them 1/4 of the estate. The court found Echols to be Earl Young's daughter and awarded her 1/2 of the estate.

The show cause hearing was held on May 27, 2004, and the judgment was entered and affirmed by the circuit court on January 3, 2005. The probate court found the estate had monies totaling $330,017.40, as reflected on the Bank of America statement. The court determined that Holliday, as the former independent personal representative of the estate, was indebted to the estate in the amount of $287,292.87. The court reached this amount by deducting $18,000 that Holliday distributed to the heirs and $50,000 that Holliday paid to the public administrator, and adding interest in the amount of $25,275.47, as reflected on the Bank of America statement. The court's judgment states the "interest [was] calculated using rates reported for Bank of America estate account." Holliday does not contest that she used the funds for her own personal use. Further, she does not appeal the judgment against her.

The heirs filed a motion to amend the judgment, claiming the interest was too low and not in accord with Missouri law, citing Section 408.020. The heirs contend the amount of interest owed to the estate is $130,154.68. The heirs' computation of this interest amount is based upon the withdrawals by Holliday at various times at a rate of nine percent. A hearing on the motion was held, but the motion was denied as a matter of law. See Rule 78.06. This appeal follows.

### Analysis

Our review is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.

---

seek direction of the court for various distributions. *See Section* 473.787 ("An independent personal representative shall proceed ... with the settlement and distribution of the estate ... and shall do so without adjudication, order, or direction of the court ...").

4. The docket entries reveal that this petition was filed, however, the legal file does not contain such petition.

5. Section 473.597 allows the court to disapprove of the final settlement of the administrator of an estate and surcharge the administrator for any loss caused by any breach of duty.

banc 1976). We shall sustain the order of the trial court if it has substantial evidentiary support, is not against the weight of the evidence, and it properly declares and applies the law. *Id.* at 32. The heirs' sole point on appeal is that the circuit court erred in calculating pre-judgment interest by using a rate other than nine percent per annum because nine percent is mandatory pursuant to Section 408.020 and is not subject to court discretion. The heirs rely upon *Denton Construction Company v. Missouri State Highway Commission,* 454 S.W.2d 44 (Mo. banc 1970) and *Newell v. Kern,* 218 S.W. 443 (Mo.App. E.D.1920). Section 408.020 states the following:

> Creditors shall be allowed to receive interest at the rate of nine percent per annum, when no other rate is agreed upon, for all moneys [sic] after they become due and payable, on written contracts, and on accounts after they become due and demand of payment is made; for money recovered for the use of another, and retained without the owner's knowledge of the receipt, and for all other money due or to become due for the forbearance of payment whereof an express promise to pay interest has been made.

If we determine Section 408.020 is applicable to the subject matter of this proceeding, the heirs are correct, the nine percent rate is mandatory upon the court. *See Leggett v. Missouri State Life Ins. Co.,* 342 S.W.2d 833, 931 (Mo.1960) and *Denton,* 454 S.W.2d at 60. However, we find Section 408.020 does not apply to the subject matter of this case. As such, the contract cases cited by the heirs, which fall within the statute's mandate, are not persuasive or relevant to resolve this matter.

An allowance of interest must be based upon either a statute or a contract, express or implied. *See Boyle v. Crimm,* 363 Mo. 731, 253 S.W.2d 149 (1952). Here,

while no contract exists, there is a governing statute, Section 473.550, that makes interest allowable in this case, but does not set the rate of interest. Section 473.550 states in pertinent part:

> All interest received by executors or administrators on debts due to the decedent ... are assets in their hands. They shall not use the money of the decedent for their own private purposes. If they do so, they shall be liable to the estate for interest and any loss of principal.... The court ... shall *exercise equitable control* in making executors ... account for interest ...

(emphasis added). Thus, the rate of interest is left to the court's equitable discretion. "In the absence of a governing statute designating the rate of interest a court of equity may exercise its discretion in the allowance of interest, depending on the facts surrounding each case." *Leggett,* 342 S.W.2d at 931.

As long ago as 1876, the Missouri Supreme Court held that although it would have been inclined to charge a higher rate of interest, the circuit court was within its equitable control to charge the executor of an estate nine percent interest on money in his hands belonging to the estate. *See In the Matter of James L. Davis,* 62 Mo. 450 (Mo.1876). The Supreme Court concluded that the rate of interest will depend on the facts surrounding each case. *Id. See also Cruce v. Cruce,* 81 Mo. 676 (Mo. 1884) (noting that a trustee of a decedent's trust should be accountable for such interest or profits as he might have obtained by the exercise of reasonable skill and exertion in the management of the fund).

In *Enright v. Sedalia Trust Co.,* 323 Mo. 1043, 20 S.W.2d 517 (1929), the heirs of an estate excepted to the final settlement of the estate due to the executor's failure to account for interest on funds of the estate deposited in the Sedalia Trust Company.

The heirs proved the Sedalia Trust Company used the funds of the estate in carrying on its own business and collected interest thereon and did not account for this interest to the estate. *Id.* at 518. The issue as framed by the Court then was "what amount of interest, under the particular facts and circumstances of this case, the Sedalia Trust Company should be required to pay?" *Id.* at 522. In reaching its decision, the Court reviewed the amount of interest the Sedalia Trust Company charged on its loans, which was between five and eight percent. *Id.* It also heard expert testimony on the amount of interest the monies would have earned based upon the daily balances in the account. *Id.* at 523. The Supreme Court affirmed the circuit court's award of six percent interest. *Id.*

The same facts and circumstances analysis has been applied in guardianship proceedings wherein the probate court also has jurisdiction. In *Hoerman's Estate*, 247 S.W.2d 762 (Mo.1952), a mother of an insane war veteran received and used for her personal benefit her son's disability payments issued by the Veterans' Administration ("VA"). The facts showed English was not the mother's first language and that she had sought advice from counsel. *Id.* at 763–64. Further, the VA, although it had checked all of her settlements, did not discover she was not accounting for these payments for almost thirty years. *Id.* Our Supreme Court held that "the general rule appears to be that there is some discretion to consider the circumstances of the case but where the guardian has used his ward's funds for his own benefit he is properly charged with legal interest at the highest rate permitted by law ..."[6] *Id.* at 766–67. The

Court continued by stating that the facts in the case were unusual and the mother acted in good faith. *Id.* The circuit court awarded interest at the highest legal rate allowed by law at the time, eight percent. The Supreme Court reversed the circuit court, reasoning that the circuit court believed it was without discretion in determining the amount of interest and reduced the interest rate from eight percent to six percent. *Id.*

In a more recent case, the co-executors of an estate were surcharged and ordered to pay back monies to the estate with interest. *Estate of Wenzlick*, 715 S.W.2d 262 (Mo.App. E.D.1986). Our Court characterized the conduct of the executors as "gross mismanagement" of the estate. *Id.* at 265. Although, the rate of interest was not discussed at length, this Court affirmed the award stating "the court was within the boundaries of its authority in surcharging the executors for interest which should have accrued on estate funds had they been prudently invested ... and for interest which should have been earned on money used to prematurely pay taxes."

The heirs direct this Court to a 1920 probate case to support their contention. *See Newell v. Kern*, 218 S.W. 443. In *Newell*, the public administrator filed a petition to discover assets in the hands of the heirs. Four of the five heirs divided their mother's estate assets among themselves without including the fifth heir. In *Newell*, the dispute was not over the amount of interest due, but rather whether interest was allowable. This Court concluded that there was an "unlawful withholding and conversion" and, therefore, held that "under the provisions of our law, Section 7179 Rev. Stat. 1909, [now Section 408.020], and of the decision of our court in

---

**6.** It should be noted that in Hoerman the court distinguishes between "highest legal rate" as set forth in what is now Section 408.030 and the "legal rate" as set forth in Section 408.020.

*Lack v. Brecht* [citation omitted], interest was allowable under the statute." *Id.* at 446.

While this case is more on point than the contract cases relied upon by the heirs, it is not controlling in this case. The facts in *Newell* involve a public administrator attempting to recover money distributed *unlawfully* by some of the heirs to themselves pursuant to Section 473.340, discovery of assets. The court in *Newell* relied upon *Lack v. Brecht,* 166 Mo. 242, 65 S.W. 976 (1901) in reaching its holding that section 408.020 applied, however, the *Lack* case was not a discovery of assets action. It was a case based upon claims of conversion and trover.

In *Lack,* a nephew of an insane woman, under guardianship, sold her real property and took rental money from her. *Id.* at 977. Thus, the Court characterized the mismanagement and unlawful actions of the nephew as suitable for a claim in trover and conversion. *Id.* at 980. The court in *Lack* further held that Section 408.020 applied because the money was "recovered for the use of another, and retained without the owner's knowledge of the receipt." *Id.* This language is the exact language used in Section 408.020. Ultimately, the Court equated the language in Section 408.020 with the cause of action of conversion and trover and affirmed the award of interest and at the fixed rate in the statute. *Id.* at 981. By relying on this case, this Court in Newell was likening a discovery of assets action under Section 473.340 with that of a claim of conversion and trover.

Modern courts have approached discovery of assets causes of action differently than that of conversion and trover, which calls into question the validity of the holdings in *Newell* and *Lack.* In *In re Estate of Goldenberg,* our Court regarded a discovery of assets procedure under Section

473.340 as a probate tool to recover assets rather than as a "device to test general fiduciary conduct, improper administration of the estate, or general disputes between the heirs." 601 S.W.2d 637, 639 (Mo.App. E.D.1980). *See also In the Estate of Alexander,* 171 S.W.3d 794 (Mo.App. W.D.2005) (holding that interest under the facts of that case was discretionary where the personal representative acted in good faith and the circuit court ordered a "return of monies" rather than a money judgment).

We do not find *Newell* to be controlling in this case. Here, the probate court exercised its authority to surcharge a personal representative for funds withdrawn for her personal use and to have her account for interest thereon. These facts are more analogous with the cases discussed at length herein.

■ The issue before us, then, is whether the circuit court was within its boundaries in awarding interest at the rate calculated on the estate's bank statement under the facts and circumstances of this case. We hold that it was.

It is undisputed that Holliday received money from Earl Young's account for her own private purposes. However, there is nothing in the record before us that indicates Holliday acted in bad faith or that she initially obtained the funds unlawfully. While the record reveals Holliday was not timely with her settlement statements to the probate court, she was not under any duty to report withdrawals to the court under this independent administration. Further, there is nothing in the record showing she knew of Earl Young's other heirs. To the contrary, the record indicates that once the petition to determine heirs was filed, no further withdrawals were made from the account. The record also indicates that Holliday sought counsel's advice.

### Conclusion

Based upon our standard of review and the facts and circumstances of this case, we find it was within the circuit court's discretion to use the Bank of America statement to determine the amount of interest due to estate. This award of interest is the amount the estate would have received had there been no withdrawals from the account. We find this holding to be in accord with *Wenzlick,* 715 S.W.2d at 265 and the cases discussed herein.

AFFIRMED.

KATHIANNE KNAUP CRANE, P.J., and LAWRENCE E. MOONEY, J.

